2012 UT 50

**STATE of Utah, Plaintiff and Respondent,**

v.

**Larry Lewis HUTCHINGS, Defendant and Petitioner.**

No. 20100024.

Supreme Court of Utah.

Aug. 10, 2012.

70. *Brigham City Sand & Gravel v. Mach. Ctr., Inc.,* 613 P.2d 510, 511 (Utah 1980).

1184

Mark L. Shurtleff, Att'y Gen., Ryan D. Tenney, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Troy Booher, Christopher L. Stout, Katherine Carreau, Salt Lake City, for defendant.

Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 Larry Lewis Hutchings was convicted of aggravated assault and criminal mischief. Hutchings appealed his convictions and submitted a hybrid *Anders*/merits brief. Upon review of Hutchings's pro se filings and his counsel's *Anders* brief, the court of appeals identified only one meritorious issue: the claim that the jury instructions misstated the law regarding aggravated assault. The court of appeals affirmed Hutchings's conviction based on its interpretation of the aggravated assault statute. On certiorari before this court, Hutchings challenges the court of appeals' interpretation of the aggravated assault statute and advances other claims foreclosed by the court of appeals' statutory interpretation. We agree that the court of appeals erred in its interpretation of the statute. Reviewing Hutchings's other claims on the merits, however, we hold that he did not receive ineffective assistance of counsel. We therefore affirm on alternate grounds.

## BACKGROUND

¶ 2 Mr. Hutchings was romantically involved with D.C., who lived in New York. He asked D.C. to move to Salt Lake City, and agreed to pay the rent for her apartment in Salt Lake City. Hutchings often spent the night at the apartment with D.C. and was the primary rent-payer.

¶ 3 Hutchings and D.C. had a verbal argument in April 2006, and a few days later, he arrived at the apartment and began pounding on the door. He demanded to be let in, but D.C. refused and asked him to leave. Hutchings then kicked in the door, which at the time was closed with three fully engaged locks. The force of the kick removed the door from its frame and partially from the wall itself. Disregarding D.C.'s demands that he leave, Hutchings entered the apartment, grabbed her by the neck, and began choking her. D.C. was able to break away several times, but Hutchings pursued and tackled her each time. Throughout this physical struggle, Hutchings stated, while choking D.C., that he was "going to kill [her]." D.C. used her fingernails to dig into Hutchings's forehead when he was choking her on the couch and again in the bedroom, and each time in response he "grabbed [her] wrist and threw it backwards." The second time Hutchings threw D.C.'s wrist backwards, her hand hit a wooden object. D.C. was later taken to the hospital, where it was determined that her hand had been broken during the attack.

¶ 4 The State charged Hutchings with aggravated assault, criminal mischief, and aggravated burglary. With respect to the charges of aggravated assault and criminal mischief, Hutchings's entire defense was that D.C. initiated the attack and assaulted him. The jury convicted Hutchings of aggravated assault and criminal mischief, but acquitted him of aggravated burglary.[1]

¶ 5 Hutchings appealed to the court of appeals and sought to raise five claims. Hutchings's counsel filed a hybrid *Anders*

---

1. Evidence before the jury, including testimony that Hutchings paid the rent for D.C.'s apartment and that his name was included on the lease, supports the acquittal for the aggravated burglary charge.

/merits brief, representing counsel's view that the only meritorious issue was that the jury instructions were incorrect as to the elements of aggravated assault. Hutchings provided pro se filings for his other four claims. The State concurred with his counsel's assessment of those four claims as frivolous.

¶ 6 The court of appeals agreed with Hutchings's counsel and the State that the issues raised in the *Anders* portion of the brief were indeed frivolous. *State v. Hutchings*, 2009 UT App 330U, para. 1, 2009 WL 3792268. The court of appeals then reviewed the remaining claim. Based on its interpretation of the aggravated assault statute, the court of appeals rejected Hutchings's challenge to the jury instructions and thus affirmed his conviction. Hutchings petitioned this court for certiorari. We granted certiorari on two questions: (1) whether the court of appeals erred in affirming the district court's instruction defining intentional conduct in relation to causation of serious bodily injury under the 2009 version of Utah Code section 76–5–103(1)(a), and (2) whether petitioner's trial counsel was ineffective. We have jurisdiction under section 78A–3–102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

 ¶ 7 "On certiorari, we review a decision of the court of appeals for correctness." *Lopez v. United Auto. Ins. Co.*, 2012 UT 10, ¶ 8, 274 P.3d 897 (internal quotation marks omitted).

 ¶ 8 A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "We review the trial court's application of the law to the facts under a correctness standard." *State v. Lenkart*, 2011 UT 27, ¶ 20, 262 P.3d 1. We apply the clearly erroneous standard to factual findings of the trial court. *Id.*

2. We note that the definition of aggravated assault has since been substantively amended. *See*

## ANALYSIS

¶ 9 Hutchings raises two issues for review. First, he argues that the court of appeals erred in its interpretation of the mental state requirement for aggravated assault. Second, he contends that the correct interpretation of the statute would support a finding of ineffective assistance of trial counsel for the failure to object to misleading jury instructions regarding aggravated assault.

¶ 10 We agree that the court of appeals erred in its interpretation of the aggravated assault statute. We thus address the question—not reached by the court of appeals—whether Hutchings received ineffective assistance of trial counsel. We hold that trial counsel's performance was deficient in the failure to object to the potentially misleading jury instructions, but that the failure was not prejudicial to Hutchings.

## I. AGGRAVATED ASSAULT STATUTE

¶ 11 The first issue regards the requisite mental states for the elements of aggravated assault. The statute defines aggravated assault, a second degree felony, as follows: "A person commits aggravated assault if he commits assault as defined in Section 76–5–102 and . . . intentionally causes serious bodily injury to another." UTAH CODE § 76–5–103(1)(a) (2009).[2] The court of appeals correctly described aggravated assault as having two elements, each with different mental states: (1) committing a simple assault and (2) having the intent to cause serious bodily injury. The court of appeals also correctly stated that the second element elevates the crime from simple assault to aggravated assault. *State v. Hutchings*, 2009 UT App 330U, para. 4, 2009 WL 3792268.

¶ 12 With respect to the mental state required for simple assault, the court of appeals correctly noted that the statute includes no prescribed mental state, and therefore applied the requirement that " 'intent, knowledge, or recklessness' " be found to establish criminal responsibility. *Id.* (quoting UTAH CODE § 76–2–102); *see also, e.g., State v. Jimenez*, 2012 UT 41, ¶ 9, 284

UTAH CODE § 76–5–103. We therefore restrict our analysis to the 2009 version of the statute.

P.3d 640. The court of appeals also correctly recognized that the second element has a different mental state requirement-the intent to cause a serious bodily injury. *Hutchings,* 2009 UT App 330U, para. 4; *see also State v. Peck,* 542 P.2d 1084, 1085 (Utah 1975) ("[I]n addition to [simple] assault, the defendant must intentionally cause serious harm to the victim.").

¶ 13 The court erred, however, in its discussion regarding the mental state of intent for the second element of aggravated assault—namely, whether the statute requires the intent to *cause* serious bodily injury or only the intent to act *resulting in* serious bodily injury. Specifically, the court erred when it stated that "[i]t is enough to satisfy the mens rea requirement [for aggravated assault] if the defendant intends the act that results in serious bodily injury." *Hutchings,* 2009 UT App 330U, para. 5.

■ ¶ 14 Intent to act *resulting in* serious bodily injury is different than intent to actually *cause* that serious bodily injury. The mere intent to act, without the intent to cause the result, is insufficient under the aggravated assault statute. *See State ex rel. Besendorfer,* 568 P.2d 742, 744 (Utah 1977); *see also State v. Howell,* 554 P.2d 1326, 1328 (Utah 1976); *Peck,* 542 P.2d at 1085. Culpability for aggravated assault requires an actual intent to cause the serious bodily harm. *State ex rel. Besendorfer,* 568 P.2d at 744 ("To support a conviction under [the aggravated assault statute] . . . the state must prove the accused . . . had a specific intent to inflict serious bodily injury on the victim . . . ."); *Howell,* 554 P.2d at 1328 (same).[3]

■ ¶ 15 The court of appeals thus was correct in its analysis requiring the finding of simple assault as the first element of an aggravated assault charge. It erred, however, in holding that intent to act satisfied the second element—an intent to inflict serious bodily harm. There must be a showing of intent to actually cause the result in order to satisfy the mental state required for the second element of aggravated assault.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 16 The court of appeals' interpretation of the aggravated assault statute ended its inquiry in this case. The court of appeals therefore did not reach Hutchings's other claims. Because the court of appeals erred in interpreting the statute, we now consider Hutchings's claim of ineffective assistance of trial counsel.[4]

■ ¶ 17 "The standard for establishing ineffective assistance requires the petitioner to show that prior counsel's representation was so objectively deficient that the defendant's case was prejudiced." *Taylor v. State,* 2012 UT 5, ¶ 54, 270 P.3d 471 (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 690–91, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We consider each requirement in turn.

### A. Trial Counsel's Performance Was Deficient

■ ¶ 18 The first issue is whether the defendant received assistance of counsel that fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The court affords a "strong presumption" that counsel's actions were within the broad range of conduct considered a sound trial strategy. *Id.* at 689, 104 S.Ct. 2052; *see also Taylor,* 2012 UT 5, ¶ 54, 270 P.3d 471. Hutchings bears the burden to

---

3. Utah's criminal code no longer applies the labels of specific intent and general intent. *State v. Calamity,* 735 P.2d 39, 43 (Utah 1987). The distinction is still embodied in our case law, however, described as intent to cause a result and intent as to conduct, respectively.

4. Hutchings submitted a pro se brief to the court of appeals arguing that trial counsel was ineffective. As noted, the court of appeals did not reach this issue because it held that there was no error with regard to the reading of the statute.

We reverse on this question and therefore review Hutchings's argument on the merits. We note that under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), Hutchings is entitled to a full briefing of any meritorious issues raised in his pro se filing to the court of appeals. *See id.* at 744, 87 S.Ct. 1396. Here, we need not remand for further briefing because counsel has fully briefed to this court the issues regarding an ineffective assistance of counsel argument with respect to the jury instructions.

rebut this strong presumption, which he must do by "identify[ing] the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. Here, Hutchings points to counsel's failure to object to jury instructions that had the potential to confuse the jury and cause it to misapply the law to the facts.

¶ 19 Hutchings concedes that Jury Instruction 14 correctly set forth the statutory elements of aggravated assault.[5] Hutchings argues, however, that Jury Instruction 27, which set forth general principles of intent,[6] may have confused the jury's understanding of Instruction 14. According to Hutchings, the jury could have misunderstood the intent element of aggravated assault when reading the instructions together, therefore finding intent to *act* rather than intent to *cause the result* sufficient to convict him of aggravated assault.

¶ 20 Instruction 27 set forth general definitions of the mental states applicable to this case as they are defined in section 76–2–103 of the Utah Code. Instruction 27 was intended to operate as a universal reference for the legal definitions of mental states.[7] Instruction 14, by contrast, specifically paired each element with its required mental state.[8]

¶ 21 Instruction 27 informed the jury that there were two ways to find intent: "when it is [the defendant's] conscious objective or desire to [1] engage in the conduct *or* [2] cause the result." (Emphasis added.) With respect to the particular intent required for aggravated assault, Instruction 14 narrowed the mental state for the second element to intent to cause a result. Instruction 14 did this by pairing the element of the crime, serious bodily injury, with the required mental state, intentionally caused. Instruction 14 clearly communicated to the jury that the intent to cause a serious bodily injury was required to find Hutchings guilty of aggravated assault.

¶ 22 These two instructions, when read in combination, could have misled the jury. Rather than reading Instruction 14 as narrowing the definitions of intent set forth in Instruction 27, the jury could have viewed Instruction 27 as broadening Instruction 14's use of "intentionally" to encompass either form of intent. The record shows no specific guidance given to the jury on how to deal with this potential ambiguity—although Instruction 37 directed the jury to not "single out any certain sentence, individual point or instruction" and to "[c]onsider the instructions as a whole and in light of each other."

¶ 23 Thus, although neither instruction was incorrect as a matter of law, using them together with no explanation or clarification as to their applicability created the potential for confusion and could have misled the jury.[9] Trial counsel should have objected to the proposed instructions or requested that the applicable mental states be tied to the particular elements of each of the three charged

---

5. Instruction 14 set forth the elements of aggravated assault as follows:

 1. That on or about April 6, in Salt Lake County, Utah, the defendant, LARRY HUTCHINGS;

 2. Intentionally or knowingly;

 3. Committed an assault on [the victim]; and

 4. Intentionally caused serious bodily injury.

6. Instruction 27 defined intent as follows: "A person engages in conduct intentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result." This instruction was relevant to the definition of simple assault.

7. Each definition provided in Instruction 27 was applicable to some element of the three charges against Hutchings and none were altogether superfluous.

8. Instruction 7 (aggravated burglary) and Instruction 19 (criminal mischief) both also specifically paired each element with its required mental state.

9. As we have previously noted, we encourage courts to take specific care to focus jury instruction language to apply narrowly to each applicable offense or element, rather than providing general statements which could be susceptible to misreading. *See State v. Potter,* 627 P.2d 75, 78 (Utah 1981) (plurality opinion) ("[The court] must take specific care that the instructions remain distinct and cannot be confused or misapplied."); *see also Salt Lake City v. Hendricks,* 2002 UT App 47U, para. 1, 2002 WL 257553. We also recognize that the second edition of the Model Utah Jury Instructions has now separated the two different types of intent to improve clarity and remove this potential for confusion.

crimes. Counsel's failure to object or otherwise act in any way to remove the ambiguity of the instructions was objectively deficient in light of this potential misreading. Counsel's failure to attempt to remove ambiguity or clarify these instructions fell outside of the broad " 'range of legitimate decisions regarding how best to represent a criminal defendant.' " *State v. Lenkart*, 2011 UT 27, ¶ 25, 262 P.3d 1 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

### B. Counsel's Deficient Performance Did not Prejudice Hutchings's Conviction

 ¶ 24 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052; *see also Green v. Louder*, 2001 UT 62, ¶ 17, 29 P.3d 638 (noting that a misleading or erroneous jury instruction is harmless if "we are not convinced that without this instruction the jury would have reached a different result"). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also id.* at 693, 104 S.Ct. 2052 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test...."). We therefore examine whether the jury's verdict would have been different had the potential ambiguity in the jury instructions been removed.

¶ 25 We note that "[j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might." *Boyde v. California*, 494 U.S. 370, 380–81, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Instead, "[d]ifferences among [jurors] in interpretation of instruc-

tions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting." *Id.* at 381, 110 S.Ct. 1190. Notwithstanding the ambiguity in the jury instructions regarding intent, there was no suggestion of any kind at trial that intent to *act* was sufficient to find that Hutchings had the intent to *cause* serious bodily injury. The elements required to convict Hutchings of aggravated assault were correctly argued to the jury with the correct mental states throughout the trial proceedings. For example, the State consistently argued during closing arguments that Hutchings had intended to cause the victim serious bodily injury. Furthermore, a review of the jury verdict in light of the evidence at trial makes it clear that the jury accepted the prosecution's view of the presence of intent to cause serious bodily injury.

 ¶ 26 "[W]e review the record facts in a light most favorable to the jury's verdict...." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (internal quotation marks omitted); *see also State v. Gardner*, 2007 UT 70, ¶ 25, 167 P.3d 1074 ("[A]n appellate court can rely on the presumption that the jury disbelieved the evidence in conflict with the jury verdict and find that there is evidence sufficient to support the jury's findings."). "It is well established that criminal intent is seldom proved by direct evidence but must be instead inferred from the circumstances of the given facts." *State v. Casey*, 2003 UT 55, ¶ 48, 82 P.3d 1106 (internal quotation marks omitted); *see also State v. Stallings*, 2007 UT App 326U, para. 3, 2007 WL 2965562 ("Intent to commit a crime can be inferred from a defendant's actions or from surrounding circumstances....").[10]

¶ 27 Hutchings concedes that the jury accepted the victim's testimony of what occurred during the physical altercation and rejected his competing version. Hutchings kicked in the door, entered the apartment, grabbed the victim by the neck, and began

---

10. We note that the State's focus on the specific moment that Hutchings flung back the victim's hand, resulting in serious bodily injury, unnecessarily narrowed the scope of inquiry with respect

to intent. The jury could have considered the full extent of Hutchings's actions throughout the altercation in determining whether Hutchings intended to cause the victim serious bodily injury.

choking her. He pursued the victim around the apartment and tackled her twice after she had been able to break away from his attack. Throughout the physical struggle, Hutchings stated, while choking the victim, that he was going to kill her. In light of this record, the jury's finding that Hutchings intended to cause serious bodily injury is entirely supported by the evidence regarding his acts and statements.[11]

¶ 28 Thus, although we recognize that the two instructions in combination were susceptible to a misreading, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the ... jury." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. In light of the jury giving full credit to the victim's testimony, we do not see how any reasonable juror could have found that Hutchings lacked the required intent to cause serious bodily injury. In other words, the instructions' susceptibility to a misreading, in light of the evidence in the record supporting the finding of Hutchings's intent to cause serious bodily injury, is not enough to hold that there is a reasonable probability of a different outcome had the jury instructions been rephrased or clarified.

### CONCLUSION

¶ 29 We hold that the court of appeals erred in holding that intent to *act* was enough to satisfy section 76–5–103's requirement of intent to *cause* serious bodily injury. At the time, the aggravated assault statute required intent to actually cause a result.

¶ 30 We reject Hutchings's ineffective assistance of counsel claim, however, for two reasons: (1) the jury instructions accurately set forth the required elements of aggravated assault and (2) the circumstances surrounding the assault clearly demonstrated Hutchings's intent to cause serious bodily injury. Accordingly, although the failure to object resulted in deficient performance, we

find no prejudice to the defendant sufficient to justify reversal of the verdict. We thus affirm the decision of the court of appeals on alternate grounds.

Justice DURHAM authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, and Justice PARRISH joined.

Justice LEE filed a concurring opinion.

Justice LEE, concurring in part and concurring in the judgment:

¶ 31 I concur in the judgment of the court in this case and in parts I and II.B of the majority opinion. I would not find trial counsel's performance deficient, however, and thus dissent from part II.A.

¶ 32 The majority acknowledges (as does Hutchings) that "Jury Instruction 14 correctly set forth the statutory elements of aggravated assault." *Supra* ¶ 20. Yet the court deems counsel's performance deficient because "Jury Instruction 27, which set forth general principles of intent," had the potential to "confuse[ ] the jury's understanding of Instruction 14." *Supra* ¶ 20. The court's point, in other words, is not that the instructions as given were incorrect, but that there was a chance that the jury could misunderstand them—by construing the general intent instruction (number 27) to override the instruction specifically defining the intent required for aggravated assault (number 14).

¶ 33 That possibility is not enough to sustain a finding of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The standard for judging counsel's performance under *Strickland* is a "most deferential one."[1] We defer to counsel's judgment because we recognize that "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the

---

**11.** Indeed, the only logical conclusion from the verdict is that, with regards to the aggravated assault and criminal mischief charges, the jury completely rejected Hutchings's testimony and instead accepted the victim's testimony.

**1.** *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011); *see also State v. Templin*, 805 P.2d 182, 186 (Utah 1990) ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks omitted)).

record, and interacted with the client, with opposing counsel, and with the judge." [2]

¶ 34 For me, this deferential standard sustains the conclusion that Hutchings's counsel performed well within the wide " 'range of legitimate decisions regarding how best to represent a criminal defendant.' " *State v. Lenkart*, 2011 UT 27, ¶ 25, 262 P.3d 1 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). One of the legitimate decisions trial counsel is continuously called on to make is whether and when to raise an objection with the court. In weighing whether to object or take exception to an instruction, the substance and propriety of the instruction is not the only strategic issue facing counsel, however. Even if counsel recognizes a potential for confusion in an instruction, he must assess not just whether an objection might be sustained, but whether the mere assertion of the objection might do more harm than good. Counsel could reasonably decide to hold off on a legally valid objection, for example, because the objectionable matter is ultimately immaterial and counsel is concerned about being viewed as the squeaky wheel.

¶ 35 We are ill-positioned to second-guess trial counsel's evaluation of these considerations. *Strickland* is not a license to impose on trial counsel our hindsight-biased sense of best trial practices. If there is a reasonable basis for withholding an objection on strategic grounds, we should affirm the effectiveness of counsel's performance under *Strickland*. And in my view the record easily sustains such a conclusion here.

¶ 36 The instructions under review seem straightforward and reasonably clear. In-struction 27 set forth general principles of intent, while Instruction 14 identified the specific elements (including intent) of aggravated assault. Nothing in the general definition in Instruction 27 is inaccurate or misleading. In fact, it simply, and quite correctly, identified two different objects of a defendant's intent—(a) a conscious objective or desire to engage in conduct and (b) a conscious objective or desire to cause a result. This instruction, in fact, is a verbatim quote from the criminal code's definition of intent.[3]

¶ 37 We can hardly fault trial counsel for not objecting to an instruction that accurately quoted the legal standard adopted by the legislature. Indeed, the appellate courts of this state have consistently regarded this very instruction as a proper "definition of specific intent" [4]—even in cases (like this one) involving specific intent crimes.[5] Hutchings's counsel undoubtedly had seen this same instruction numerous times before, and our statutes and case law gave him no reason to question it.

¶ 38 Even assuming for the sake of argument that Instruction 27 by itself created some potential for confusion, that potential would have been resolved by Instruction 14. This instruction correctly clarified the specific application of the general instruction to the crime of aggravated assault, indicating that the crime requires proof of both kinds of intent identified in Instruction 27–of intent to commit the "assault" and to "[i]ntentionally cause[ ] serious bodily injury." In light of the specific instruction regarding aggravated

2. *Harrington*, 131 S.Ct. at 788.

3. *See* UTAH CODE § 76–2–103(1) ("A person engages in conduct ... [i]ntentionally, or with intent or willfully with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.").

4. *State v. Potter*, 627 P.2d 75, 78, 82 (Utah 1981) (plurality opinion); *see also State v. Larsen*, 2008 UT App 15U, para. 3, 2008 WL 96089 (per curiam) (noting that to commit criminal mischief, a person must " 'intentionally damage[ ], deface[ ], or destroy[ ] the property of another' " and that "[a] person acts intentionally 'with respect to the nature of his conduct or to a result of his con-duct, when it is his conscious objective or desire to engage in the conduct or cause the result'") (quoting UTAH CODE § 76–2–103(1) (2003)).

5. *See State v. Maestas*, 652 P.2d 903, 907 (Utah 1982) (observing that the jury was correctly instructed on the elements of attempted first degree murder and that the instructions "defined the terms 'intentionally' and 'knowingly' in precisely the language used by the Utah Criminal Code" (citing UTAH CODE § 76–2–103(1), (2)), *overruled on other grounds by State v. Casey*, 2003 UT 55, ¶¶ 16–19, 51, 82 P.3d 1106 (clarifying that attempted murder is a specific intent crime and rejecting any implication in *Maestas* that it is enough to convict a defendant who merely "acted knowingly").

assault (number 14), I do not see how a jury could have "misunderstood the intent element of aggravated assault . . . finding intent to act rather than intent to cause the result sufficient to convict [defendant] of aggravated assault." *Supra* ¶ 20 (emphases omitted). The only way the jury could reach that conclusion would be for it to completely disregard Instruction 14. And Instruction 27 did not at all open that door by simply identifying the two basic objects of a defendant's intent.

¶ 39 Thus, the two instructions in question seem clear and straightforward. And they are compatible with each other and an accurate statement of the law. I would not fault counsel for failing to object to these instructions, particularly where he may have been saving his thunder for other more significant matters.

¶ 40 The course of proceedings at trial seems to me to confirm this conclusion. As the majority indicates, there was no confusion at trial over the interaction between the aggravated assault intent instruction (number 14) and the general intent instruction (number 27). *Supra* ¶ 26. "[T]here was no suggestion of any kind at trial that intent to *act* was sufficient to find that Hutchings had the intent to *cause* serious bodily injury," and "[t]he elements required to convict Hutchings of aggravated assault were correctly argued to the jury with the correct mental states throughout the trial proceedings." *Supra* ¶ 26. That practical context does more than establish a lack of prejudice under *Strickland;* it also sustains the conclusion that any potential for confusion between the jury instructions in this case was purely theoretical, and thus that counsel would have been acting well within reason in deciding to hold the fire of his objections for other mat-

ters of real significance. I would affirm on this basis, and find that Hutchings' trial counsel acted reasonably under *Strickland.*

¶ 41 The majority's contrary conclusion seems rooted in its sense of "best practices"—in our prior urging that "courts . . . take specific care to focus jury instruction language to apply narrowly to each applicable offense or element, rather than providing general statements which could be susceptible to misreading," and in the fact that "the second edition of the Model Utah Jury Instructions (MUJI) has now separated the two different types of intent to improve clarity and remove th[e] potential for confusion" between instructions like those given in this case. *Supra* ¶ 24 n. 9. I have no quarrel with the court's sense of best practices. And I applaud the recent MUJI amendment as an improvement in clarity.[6] But I would not equate our sense of best practices with the deferential standard for effectiveness of counsel under *Strickland.*

¶ 42 *Strickland* is aimed at establishing a minimal bar of competence, not an aspirational standard of best practices. Hutchings' trial counsel easily satisfied the standard of minimal competence under *Strickland,* and I would affirm on that basis.

---

**6.** I would also note, however, that even if *Strickland* were deemed to require an objection to any jury instruction that failed to follow MUJI, Hutchings' counsel still could not properly be found deficient. The MUJI amendment cited by the majority was adopted at least several months after Hutchings was convicted (on September 4, 2007). (The MUJI instructions do not seem to carry an adoption date, but the archive.org "wayback machine" confirms that the new instruction cited by the majority was not available on the MUJI website as of December 15, 2007, but was available by February 13, 2008. *See* Internet Archive Wayback Mach, http://web.archive.org/web/20071215010930/http://www.utcourts.gov/resources/muji/; http://web.archive.org/web/20080213184921/http://www.utcourts.gov/resources/muji/ (last visited July 9, 2012)). Thus, Hutchings' counsel can hardly be condemned for not following MUJI. At worst he failed to anticipate a future—but not yet released—amendment to the model instructions. Perhaps the most informed lawyer might have been aware of this emerging development in our model instructions. But the failure to rise to that level can hardly be deemed a deficiency under *Strickland.*