Justice DURHAM,
dissenting:
¶ 51 I agree that Mr. Barela's counsel provided ineffective representation by failing to object to the jury instructions. The instructions were erroneous because they implied that the State had to prove only that K.M. *687 did not consent to sexual intercourse rather than prove that Mr. Barela had the requisite mens rea as to the victim's lack of consent. In other words, the instructions did not convey the requirement that the State prove Mr. Barela's intentional, knowing, or reckless state of mind regarding the absence of K.M.'s consent. See State v. Calamity, 735 P.2d 39, 43 (Utah 1987) (crime of rape "may be proved by an intentional, knowing, or reckless mental state"); Urax Cop® § 76-2-102 ("[Wlhen the definition of [an] offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility.").
¶ 52 I disagree, however, with the majority's conclusion that Mr. Barela satisfied the second step of a Strickland ineffective assistance of counsel claim. Supra ¶¶ 28-32. In my view, Mr. Barela cannot show a reasonable probability that, but for the deficiency of trial counsel in failing to object to the instructions, the jury's verdict would have been different.
¶ 53 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a eriminal proceeding if the error had no effect on the judgment." Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id. at 695, 104 S.Ct. 2052.
¶ 54 In State v. Hutchings, 2012 UT 50, ¶¶ 24-28, 285 P.3d 1183, we recently applied the Strickland prejudice standard in a similar case. We determined in Hutchings that a defense attorney's performance was deficient because the attorney failed to object to a potentially confusing mens rea jury instruction during an aggravated assault trial. Id. ¶¶ 18-23. We concluded that the instructions given created an unacceptable risk that the jury did not comprehend the necessity of finding that the defendant intended to cause serious bodily injury. Id. ¶¶ 22-23. We upheld the conviction, however, because we determined that there was not a reasonable probability that a correctly instructed jury would have reached a different verdict. Id. ¶ 28. The only logical conclusion to be drawn from the verdict in Hutchings was that the jury had rejected the defendant's testimony and accepted the victim's testimony that the defendant kicked in the victim's door, grabbed the victim by the neck and chocked her, broke her hand by slamming it against a hard object, and stated that he was going to kill her, Id. ¶¶ 3, 27 & n. 11. Given the "totality of the evidence before the ... jury," Strickland, 466 U.S. at 695, 104 S.Ct. 2052, the instructional error did not undermine our confidence in the outcome of the trial because a correctly instructed jury likely would have found that the defendant acted with the requisite mens rea, Hutchings, 2012 UT 50, ¶ 28, 285 P.3d 1183.
¶ 55 We reached a similar conclusion in State v. Powell, 2007 UT 9, 154 P.3d 788 and State v. Casey, 2003 UT 55, 82 P.3d 1106. In both cases, defense counsel did not object to an erroneous instruction that the jury could find the defendant guilty of attempted murder if the defendant acted either intentionally or knowingly. Powell, 2007 UT 9, ¶¶ 17, 19, 154 P.3d 788; Casey, 2003 UT 55, ¶¶ 38-39, 82 P.3d 1106. These instructions were in error because a defendant may only be con-viected of attempted murder if the defendant acted intentionally; a knowing state of mind is insufficient. Casey, 2003 UT 55, ¶ 38, 82 P.3d 1106. We nevertheless upheld the convictions in both Powell and Casey, holding that there was not a reasonable likelihood that the instructional error affected the ver-diet.[1] Powell, 2007 UT 9, ¶¶ 21-23, 154 P.3d *688 788; Casey, 2003 UT 55, ¶¶ 46-50, 82 P.3d 1106.
¶ 56 Powell and Casey are factually similar to each other, leading this court to hold that the instructional error in each case was harmless for similar reasons. In Powell, the defendant twice pointed a gun at the victim's head and pulled the trigger, but the gun did not fire. 2007 UT 9, ¶¶ 3-4, 154 P.3d 788. As the defendant fled in a car, he noticed the loaded magazine clip for the gun lying on the floor and exclaimed, "That's why [it] didn't work!" Id. ¶ 5. In Casey, the defendant pointed a gun at the victim's head and pulled the trigger, but it misfired. 2003 UT 55, ¶ 5, 82 P.3d 1106. The defendant then shot at the victim as she fled, but missed. Id. In both Powell and Casey, we reviewed the compelling evidence that the defendants intended to kill their victims and held that there was not a reasonable probability that a correctly instructed jury would have come to a different conclusion. Powell, 2007 UT 9, ¶ 23, 154 P.3d 788; Casey, 2003 UT 55, ¶¶ 49-50, 82 P.3d 1106.
¶ 57 In summary, Strickland and Utah caselaw require courts to evaluate the totality of the evidence presented to the jury to determine the probability of a more favorable outcome for the defendant if defense counsel had provided adequate representation and ensured that the jury had been properly instructed. A conviction should only be reversed if this probability of a more favorable result is "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 58 In this case, Mr. Barela asserted that he was innocent because K.M. actively solicited a sexual encounter. Supra ¶ 5. Although the verdict demonstrates that the jury did not believe Mr. Barela's testimony, we must still evaluate the likelihood that a correctly instructed jury would have found that Mr. Barela lacked the required mens rea given K.M.'s version of what happened. See Hutchings, 2012 UT 50, ¶ 28, 285 P.3d 1183 (evaluating the likelihood of a defense verdict if the jury had been correctly instructed where the jury had clearly rejected the defendant's testimony); Powell, 2007 UT 9, ¶ 23, 154 P.3d 788 (same).
¶ 59 KM. testified that Mr. Barela had given her a massage on one occasion prior to the day she was sexually assaulted. The first massage was uneventful, and KM. did not request Mr. Barela for the second massage. During the second massage, the parties did not engage in conversation. Close to the end of the massage, Mr. Barela began to massage K.M.'s inner thigh while she was lying on her back. This made KM. uncomfortable. Before K.M. could formulate a response, and within "a matter of seconds" of massaging her inner thigh, Mr. Barela pulled her to the end of the table without saying anything, dropped his pants, and penetrated K.M.'s vagina with his penis. KM. testified that "it happened very fast" and that "before [she] knew it," Mr. Barela had penetrated her. Mr. Barela ejaculated within about thirty seconds to a minute and pulled up his pants. He then said, "Okay, this concludes your massage," and left the room.
¶ 60 Given this evidence, it is highly probable that a properly instructed jury would have concluded that Mr. Barela knew that K.M. had not consented to sex when he penetrated her vagina with his penis. And it is even more likely that a jury would conclude that Mr. Barela acted with criminal recklessness. A person acts with a reckless state of mind when that person engages in conduct [rlecklessly with respect to cireum-stances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the cireumstances exist or the result will occur. The risk
[rlecklessly with respect to cireum-stances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the cireumstances exist or the result will occur. The risk *689 must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
Urax Cope § 76-2-108(8) Thus, the test for determining whether a criminal defendant acted recklessly involves both a subjective and an objective element. First, the defendant must subjectively be "aware of but consciously disregard[ ] a substantial and unjustifiable risk" that a particular circumstance exists or that a particular result will occur. Id. Second, in order to determine whether disregarding the risk was "unjustifiable," the fact-finder must measure the defendant's conduct against an objective, reasonable person standard.
1 61 According to K.M.'s testimony, which the jury found credible, Mr. Barela inserted his penis into the vagina of a client who was a near-stranger to him within a matter of seconds of massaging her inner thigh. KM. did not indicate her consent to Mr. Barela's actions in any way or even engage in conversation with him. The most that can be said is that KM. did not actively object to Mr. Barela massaging her inner thigh within see-onds of his doing so.[2] Thus the question presented to a correctly instructed jury would have been (1) whether Mr. Barela was "aware of but consciously disregard[ed] a substantial and unjustifiable risk that" KM. had not consented to sex and, if so, (2) whether Mr. Barela's assumption of the risk of being wrong about any conjecture that KM. had consented to sex under these facts? [3]constitute(d] a gross deviation from the standard of care that an ordinary person would exercise." Id.
162 Under this reckless state of mind standard, it is not reasonably probable that a correctly instructed jury would have acequit-ted Mr. Barela. When K.M. entered the establishment where Mr. Barela worked as a massage therapist, she did so as a paying client seeking a service at an established business. KM. had no relationship with Mr. Barela other than that of a client, and she did not engage in flirtatious behavior or even friendly conversation with him. Although KM. was required to undress and lie beneath a sheet, a reasonable massage therapist would not perceive this as an indication that KM. consented to sex any more than a reasonable doctor would perceive a patient's state of undress as consent. Moreover, a reasonable massage therapist would not perceive the act of massaging the inner thigh of a client as an invitation for a sexual encounter in a place of business that is accepted when the client simply fails to object within a few seconds. In my view, a reasonable jury likely would find that Mr. Barela was aware of but consciously disregarded the risk that KM. did not consent to sex. Moreover, a jury likely would not only find that Mr. Bare-la breached the standard of care that an ordinary massage therapist would observe by disregarding this risk, but also would conclude that any assumption that a client had consented to sex under these cireumstances would be a gross deviation from this standard of care.
T63 Similar to this court's holdings in Hutchings, Powell, and Casey, I conclude that the probability that a properly instructed jury would acquit Mr. Barela of rape is not sufficient to undermine my confidence in the verdiet. I would, therefore, hold that Mr. Barela cannot satisfy the second step of *690 the Strickland analysis, and I would affirm his conviction.

. The defendants in Powell and Casey did not raise a Strickland ineffective assistance of counsel argument. Instead, they asserted that this court should have reviewed the unpreserved instructional errors under the plain error doctrine, which requires the appellant to show that "() [aln error exists; (#i) the error should have been obvious to the trial court; and (iii) the error is harmful, ie., absent the error, there is a reasonable likelihood of a more favorable outcome for *688 the appellant, or phrased differently, our confidence in the verdict is undermined." Casey, 2003 UT 55, ¶ 41, 82 P.3d 1106 (internal quotation marks omitted); accord Powell, 2007 UT 9, ¶ 18, 154 P.3d 788. Because the third element of a plain error analysis is identical to the second step of a Strickland analysis, the reasoning of Powell and Casey regarding whether the instructional error affected the outcome of those cases is relevant to the question of prejudice at issue in this case. See State v. Dunn, 850 P.2d 1201, 1225 (Utah 1993) ("Th[e] prejudice test [for ineffective assistance of counsel] is equivalent to the harmfulness test we apply in determining plain error....").

. In his brief before this court, the defendant focused on K.M.'s testimony that she was frozen with shock while she was being sexually assaulted, and that she did not do or say anything. This testimony, however, has no bearing on Mr. Bare-la's state of mind when he first inserted his penis into K.M.'s vagina. It is at this moment that Mr. Barela was guilty of rape if he acted with the requisite mens rea as to the absence of K.M.'s consent. Any events occurring after this moment are irrelevant to the question of whether Mr. Barela acted intentionally, knowingly, or recklessly.

. -Mr. Barela did not testify that he believed K.M. had consented to sex given the version of events K.M. testified to. He testified only as to his belief that K.M. had consented given his version of events in which K.M. initiated a sexual encounter (a version clearly rejected by the jury). The State, however, bears the burden of proving Mr. Barela's culpable state of mind, and the absence of specific testimony regarding Mr. Barela's perception of whether K.M. had consented to sex under K.M.'s version of events does not affect my analysis.