STATE of Utah, Plaintiff and Appellee,

v.

Roger L. STRADER, Defendant and Appellant.

No. 940244–CA.

Court of Appeals of Utah.

Aug. 31, 1995.

ORME, Presiding Judge:

Defendant Roger L. Strader pled guilty to possession of a controlled substance, a violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1994), but retained his right to appeal the trial court's denial of his motion to dismiss. *See State v. Sery,* 758 P.2d 935, 939 (Utah App.1988). Strader claims on appeal that his prior prosecution on a different charge arising from the same criminal episode precludes his prosecution for possession of a controlled substance. We affirm.

## FACTS

The facts of this case are undisputed. On the night of July 21, 1992, Officer Jerry Randall of the West Valley Police Department was preparing paperwork while sitting in his patrol car in a parking lot at 3900 West and 3390 South. At approximately 11:00 p.m., he observed a vehicle pull into an adjacent construction site. A man, later identified as Strader, exited the vehicle, entered a building on the site, returned carrying an object which he placed in the vehicle, and drove away. Officer Randall stopped the vehicle and asked Strader, who was driving, for identification.

Strader stated he had no identification, but gave his name as Stanley Kent Strader. After Officer Randall questioned him about the object in the back seat, a circular saw, Strader said he was picking it up for a friend named Tony Ochoa. Strader's female passenger left the scene to retrieve his identification from their nearby apartment. Another man, professing to be Tony Ochoa, returned with a driver's license issued to Earl Nesbitt, which contained a picture resembling Strader. However, the license had obviously been altered. The top lamination layer had been peeled back to allow insertion of Strader's picture.

Officer Randall placed Strader under arrest for giving false information to a police officer, a class C misdemeanor in violation of Utah Code Ann. § 76–8–507 (1995). After a check on the vehicle's license plates revealed that the plates belonged to another vehicle, Officer Randall impounded the vehicle. In the course of the ensuing inventory search, Officer Randall found a loaded syringe under the driver's seat and a packet of syringes in the glove compartment. A canine unit discovered another syringe under a seat cover. Subsequent tests revealed that some of the syringes contained methamphetamine. Meanwhile, another officer found the owner of the circular saw, who identified it as property stolen from him.

Strader was booked into the Salt Lake County Jail on three charges: giving false identification to a police officer, a class C misdemeanor; theft, a class A misdemeanor;

and possession of a controlled substance, a third degree felony. He was subsequently charged by the West Valley City prosecutor with the misdemeanor false identification offense. He entered a guilty plea to this charge, in Circuit Court, on September 3, 1992.

The Salt Lake County Attorney's Office later filed charges for all three offenses. At his arraignment in Third District Court on September 27, 1993, Strader entered a plea of not guilty. Two months later, he filed a motion to dismiss all charges. The court held a hearing on the motion, at which time it dismissed the charge for false identification because the same charge had already ·been prosecuted in Circuit Court the previous year. The court declined to dismiss the remaining counts for theft and possession of a controlled substance. The following month, pursuant to a plea agreement, the court dismissed the theft charge and Strader changed his plea to guilty on the possession charge. However, Strader reserved his right to appeal the denial of his motion to dismiss all charges pursuant to *State v. Sery,* 758 P.2d 935, 939 (Utah App.1988).

In its findings and conclusions issued March 9, 1994, the trial court determined that Strader's act of giving false identification to a police officer was not part of the same criminal episode, as defined by Utah Code Ann. § 76–1–401 (1995), as the other offenses of theft and possession of a controlled substance.[1] Strader now appeals from the trial court's refusal, premised on that conclusion, to dismiss all charges.

**1.** The trial court made, inter alia, the following conclusions of law:

> 3. The defendant gave the false name to the police officer before the drugs were discovered and before the theft had been confirmed. The defendant, by giving a false name may have been trying to escape apprehension by the officer but this action did not have the same criminal objective and was not related to the theft or the possession of drugs.
> 4. The false identification to a police officer, theft and possession of a controlled substance charges were not part of a single criminal episode as defined by § 76–1–401.... There was not a single criminal objective and they

## ISSUE

Because the theft charge was ultimately dismissed as part of the plea arrangement, the sole issue for our consideration is whether the trial court erred in refusing to dismiss the charge of possession of a controlled substance, based on its determination that the charge did not arise from the same criminal episode as the previously prosecuted charge of giving false identification to a police officer.[2]

## STANDARD OF REVIEW

■ The "trial court's interpretation of a statute presents a question of law," *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990), and thus is reviewed for correctness and accorded no particular deference. *See id.; Salt Lake City v. Emerson,* 861 P.2d 443, 445 (Utah App.1993).

## ANALYSIS

### 1. Applicable Law

Our starting point is the two-prong definition of "single criminal episode" found in the Utah Criminal Code: "all conduct which is closely related in time *and* is incident to an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76–1–401 (1995) (emphasis added).

If multiple offenses meet the definition of a single criminal episode, the applicable charges must "be filed in a single court that has jurisdiction of the charged offense with the highest possible penalty of all the offenses charged ... [and] may not be separated except by order of the court and for good

> are [subject to] different statutes, have different elements, would be prosecuted by different jurisdictions and have different penalties.

**2.** For purposes of illustration and analysis, we will nonetheless refer to the theft charge later in this opinion in the context of examining the relationship of the three offenses to each other. Strader also argues that the inclusion of all three charges in a single information must be taken as an admission by the State that all were part of a single criminal episode. This argument is without merit and we decline to address it. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989); *State v. Rangel,* 866 P.2d 607, 611 n. 3 (Utah App.1993).

cause shown." Utah R.Crim.P. 9.5(1)(a), (b). Additionally, there are two statutes pertinent to joinder of offenses. If multiple charges result from the same criminal episode, a defendant cannot be subject to separate trials "unless the court otherwise orders to promote justice." Utah Code Ann. § 76–1–402(2) (1995). If a defendant has already been prosecuted for an offense, he or she cannot be prosecuted subsequently for another offense arising out of the same criminal episode, so long as the later offense "was or should have been tried under Subsection 76–1–402(2) in the former prosecution." *Id.* § 76–1–403(1)(a). However, neither Rule 9.5 nor the referenced statutes apply if the offenses at issue are not part of the same criminal episode, in which case a defendant may be properly prosecuted in separate proceedings.

### 2. Scope of Analysis

■ Strader's appeal is somewhat atypical. It is not the usual defendant who clamors for all pending charges against him to be tried together before the same jury. The conventional wisdom holds that a jury will consider a charge more fairly if untainted by hearing the details of an entire series of charges pending against the defendant.[3] In cases determining joinder issues, defendants typically *contest* joinder by attempting to show the offenses did *not* arise from a single criminal episode and, thus, that their severance and separate trial motions should have been granted.

In contesting the *separate* prosecution of his offenses, Strader contends the false information offense was part of the same episode as the theft and drug possession offenses. Emphasizing that he claims violation of the joinder provisions found in section 76–1–402(2), section 76–1–403(1)(a), and Rule 9.5(1) rather than a violation of the constitutional double jeopardy doctrine, Strader argues that we should take an expansive view in analyzing whether the multiple offenses indeed arise from the same criminal episode. As Strader recognizes, the opposing interpretive model is that suggested by double jeopardy cases, in which a rather restrictive interpretation is given to the key term "same offence." U.S. Const. amend. V. As is hereafter explained, neither of these approaches is wholly appropriate to Strader's claim.

■ An expansive interpretation of "single criminal episode" is appropriate in cases *contesting* joinder of multiple offenses. Rule 9.5, section 76–1–402(2), and section 76–1–403(1), while related to double jeopardy,[4] expand the scope of offenses barred from multiple trials beyond "the same offense" focus in double jeopardy, *see State v. Franklin,* 735 P.2d 34, 35–36 (Utah 1987), to all offenses arising from a "single criminal episode." [5] An expansive interpretation promotes the general joinder intent of Rule 9.5 and relevant statutes, i.e., to avoid subjecting the defendant to separate trials and to promote judicial economy.[6] *See State v. Germonto,* 868 P.2d 50, 60 (Utah 1993); *State v. Gotfrey,* 598 P.2d 1325, 1328 (Utah 1979). Also, because appellate courts review decisions regarding joinder or severance of offenses only for an abuse of discretion, *Germonto,* 868 P.2d at 59; *State v. Haga,* 735 P.2d 44, 47 (Utah 1987), it follows that the reviewing court would, as a practical matter, take a

---

**3.** Indeed, a cynic might suggest that if the three charges would have been brought together initially, Strader would have moved to sever, arguing that the three offenses were completely distinct wrongs and that he would be prejudiced if they were all tried together.

**4.** Both statutes are found in Part 4 of the Criminal Code, entitled "Multiple Prosecutions and Double Jeopardy." Strader's counsel noted during the hearing that a double jeopardy argument was "closely related but a different beast than the one we're talking about here."

**5.** This court has stated that cases considering whether offenses "are separate for double jeopardy purposes" are not applicable in single episode cases contesting the court's decision to join offenses or deny a motion for severance. *State v. Lopez,* 789 P.2d 39, 44 (Utah App.1990).

**6.** Conversely, the trial court has discretion to order separate proceedings for offenses arising from the same criminal episode "to promote justice," Utah Code Ann. § 76–1–402(2), and "for good cause shown." Utah R.Crim.P. 9.5(1)(b). For example, severing the offenses may be appropriate if joinder would unduly prejudice a defendant and jeopardize his or her right to due process. *See State v. McCumber,* 622 P.2d 353, 356 (Utah 1980).

broad view of what constitutes a single criminal episode in that context.

 On the other hand, the protection against double jeopardy is a fundamental constitutional right which prevents a defendant from being tried more than once for the same crime. U.S. Const. amend. V; Utah Const. art. I, § 12. Accordingly, review of a double jeopardy issue employs a very narrow perspective, focusing on whether a subsequent prosecution is for the same *offense* without regard to whether multiple offenses were part of the same criminal episode. *See State v. Porter*, 705 P.2d 1174, 1178 (Utah 1985) (holding successive burglaries of different areas in one apartment complex did not comprise the same offense); *State v. Cornish*, 571 P.2d 577, 578 (Utah 1977) (per curiam) (holding car theft and failure to stop after traffic violation were distinct offenses not subject to double jeopardy analysis). *See also State v. James*, 631 P.2d 854, 856 (Utah 1981) (holding double jeopardy does not prevent multiple convictions for multiple offenses arising out of single criminal episode).

On balance, the circumstances of Strader's claim place this case closer to a double jeopardy analysis than to a joinder of offenses analysis.[7] He contends that a previous prosecution for one offense bars the subsequent prosecution of a different offense because both are part of the same criminal episode. Such a claim is comparable to asserting double jeopardy bars a subsequent prosecution because both proceedings would involve the same offense. Accordingly, although our focus must be on the inherently broader term "criminal episode," in the unique posture of defendant's case we believe it is appropriate to take a narrow, rather than an expansive, view of what that term entails.

### 3. Application to Facts

 As stated above, "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective" comprises a single criminal episode. Utah Code Ann. § 76–1–401 (1995). There is no question, nor do the parties dispute, that both offenses pertinent here satisfied the temporal requirement of section 76–1–401. Officer Randall found the illegal controlled substance during a search conducted pursuant to and immediately after Strader's arrest for giving false identification. Accordingly, we limit our examination to the second prong of the statutory definition of a single criminal episode, i.e., whether the offenses for which Strader was charged were incident to the accomplishment of the same criminal objective.

 Whether the charge for false identification was incident to the accomplishment of the same criminal objective as the charge for possession of a controlled substance depends on the specific facts of the case viewed under to the totality of the circumstances.[8] Additionally, the totality of facts and circumstances is viewed objectively to determine whether there exists a common criminal ob-

---

7. Thus, the cases upon which Strader relies are unpersuasive because they are of the genre contesting joinder. In *State v. Germonto*, 868 P.2d 50 (Utah 1993), the defendant contested joinder of forgery with the charges of murder and robbery. The Supreme Court, in affirming the trial court's denial of the defendant's severance motion, held that because the forged checks were stolen from the victim during the murder and robbery, all three offenses had the common criminal objective of obtaining property from the victim. *Id.* at 59. Other cases cited by Strader are similarly inapplicable because they uphold the trial court's decision to join offenses for trial on the rationale that they were all part of a single criminal episode. *See State v. McGrath*, 749 P.2d 631, 633 (Utah 1988) (eight charges for sale of a controlled substance); *State v. Lopez*, 789 P.2d 39, 42 (Utah App.1990) (murder and child abuse); *In re R.D.S.*, 777 P.2d 532, 538 (Utah App.1989) (kidnapping, child abuse, and homi-

cide), *cert. denied*, 836 P.2d 1383 (Utah 1990). Finally, in *State v. Johnson*, 784 P.2d 1135 (Utah 1989), the Court considered "single criminal episode" in the context of admissibility of evidence rather than joinder or severance of offenses. *Id.* at 1141.

8. The totality of circumstances approach is employed in a variety of criminal law contexts. *See, e.g., State v. Mabe*, 864 P.2d 890, 892 (Utah 1993) (determining whether confession was voluntary under totality of circumstances); *State v. Case*, 884 P.2d 1274, 1276 (Utah App.1994) (examining totality of circumstances to determine whether articulable facts support reasonable suspicion); *City of Orem v. Henrie*, 868 P.2d 1384, 1388 (Utah App.1994) (basing the determination of exigent circumstances for warrantless search on totality of circumstances).

jective. It would be inappropriate to decide the question based on whatever subjective intent the defendant may allege for the offenses at issue. *Cf. State v. Arroyo,* 770 P.2d 153, 155 (Utah App.1989) (categorizing "actual state of mind of the officer" as irrelevant in determining whether automobile stop was pretextual; objective evaluation required instead). Finally, as explained above, in cases like the instant one our perspective is narrow rather than expansive.

We conclude that Strader's conduct in giving the incorrect name and a falsified driver's license to Officer Randall is not incident to his possession of a controlled substance or, for that matter, to his accomplishing the theft of the saw.

The only possible nexus between the crimes is an intent to avoid arrest on the other charges by giving false identification. Yet Strader was already detained by Officer Randall, who had observed his involvement in what appeared to be theft activities, at the time he gave false information. His identity was inconsequential to his imminent arrest for theft under whatever name he cared to use. Use of a false identity might have deflected further problems by way of outstanding warrants, driving on a revoked license, or other similar legal entanglements, but it would have no bearing on the officer's investigative focus on Strader as the perpetrator of a theft committed in the officer's presence. Strader's suspicious activities at the construction site and possession of drugs were not absolved, explained, or mitigated by giving the officer his brother's name or an obviously altered driver's license.[9] Also, the fact he was driving a car with incorrect license plates and that he had a forged driver's license at hand seem to indicate that obscuring his identity was an ongoing and routine course of conduct with Strader and not specifically done to somehow further his theft or drug possession activities.

Objectively viewing all of the facts and circumstances in a narrowly focused way, we conclude that because there was no common criminal purpose, the offense of false identification and the other offenses with which Strader was charged, in particular the drug offense to which he pled guilty, are not part of the same criminal episode for purposes of the issue before us.

## CONCLUSION

For the purposes relevant here, the offense of false identification for which Strader was prosecuted was not part of the same criminal episode as the offense of possession of a controlled substance because there was no common criminal objective. Therefore, sections 76–1–402(2) and –403(1) do not bar

---

9. In *State v. Cornish,* 571 P.2d 577, 578 (Utah 1977) (per curiam), the Utah Supreme Court held that a crime committed to avoid arrest for a prior crime cannot always be considered as part of the same criminal episode. The Court later noted that "our failure to announce that such conduct always warrants joinder does not preclude us from concluding that under some circumstances, joinder may be proper." *State v. Germonto,* 868 P.2d 50, 60 (Utah 1993).

In the instant case, the outcome may well have been different if the facts had created a stronger nexus of purpose between the offenses. Consider the following two hypothetical scenarios: In the first, Officer Randall finds a circular saw on the back seat with a bill of sale made out to "Joe Carpenter" and Strader tells him that his name is "Joe Carpenter." In the second hypothetical, Officer Randall observes Strader, carrying a circular saw, leave a construction site marked with a large sign reading "Beagle Boys Construction." Strader tells him his name is "Bart Beagle." In both scenarios, the false identification would be closely connected with the alleged theft activities because Strader, in order to evade arrest, would be using the names as a means to explain his legitimate presence at the construction site and/or his lawful possession of the saw. By contrast, in the instant case, Strader's use of his brother's identity and that of Earl Nesbitt did nothing to explain away his apparently unlawful taking of the saw.

The drug offense is yet a further step removed from Strader's giving false information. But for his arrest under whatever name on theft charges, he would not have been arrested and his car searched and the syringes found. Nonetheless, one can envision a more purposeful connection between giving false information and possession of a controlled substance, as in this hypothetical situation: Officer Randall observes syringes in Strader's car, then asks Strader for identification. Strader produces a counterfeit police shield and introduces himself as "Earl Nesbitt, undercover agent with the Metro Narcotics Strike Force." In this scenario, he would employ a false identity in order to create a legitimate reason for possessing a controlled substance.

the subsequent prosecution proceedings in district court. Accordingly, the judgment of the trial court is affirmed.

JACKSON, J., concurs.

DAVIS, Associate Presiding Judge (concurring in result):

In my view, the Scope of Analysis section of the main opinion is not only unnecessary to the result but analytically flawed. Strader is seeking to avail himself of the provisions of Utah Code Ann. §§ 76–1–401 to –405 (1990); he is *not* claiming that he was "twice put in jeopardy" within the meaning of the Fifth Amendment to the United States Constitution.[1]

Moreover, Strader's reliance upon cases in which the defendant is contesting joinder is totally appropriate. There is nothing in the statutes upon which Strader relies that suggests an "expansive" interpretation where the government is pursuing joinder or a "very narrow perspective" where the defendant is attempting to benefit from the statutory provisions.[2] Thus, the majority's application of a double standard for interpreting the definition of a single criminal episode set out in section 76–1–401 is unnecessarily confusing, especially where, as here, either interpretation would yield the same result. *See State v. Germonto*, 868 P.2d 50, 59–60 (Utah 1993) (applying "expansive" interpretation, yet requiring nonetheless, as in the case at bar, that the theory for joinder "posit[ ] a *single objective* throughout the whole [criminal] episode") (emphasis added).

As stated in the terse, straightforward analysis in the Application to Facts section of the main opinion, Strader's crime of giving false information to a police officer is simply not part of a single criminal episode involving the theft and drug offenses under the definition set out in section 76–1–401. Therefore, it is unnecessary to meld a constitutional analysis with statutory interpretation, even if that exercise were logically suggested by the statute.

---

1. *See* note four of the main opinion.

2. Even if it is assumed that such an approach is appropriate to an analysis at the constitutional level.