2015 UT App 170

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DAVID M. RUSHTON,
Defendant and Appellant.

Opinion
No. 20120969-CA
Filed July 9, 2015

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 111903029

Joanna E. Landau, Attorney for Appellant

Sean D. Reyes, Ryan D. Tenney, and Mark W. Baer,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

ROTH, Judge:

¶1     David M. Rushton entered a conditional guilty plea to one misdemeanor and two felony offenses stemming from his failure to pay employee wages and remit retirement withholdings while he owned and operated Fooptube, LLC, a computer programming and design company. He argues that the district court should have granted his motion to dismiss the charges because they arose from the same criminal episode as charges to which he had previously pleaded guilty. We affirm Rushton's convictions.

BACKGROUND

¶2     In 2008, the Utah State Tax Commission began investigating Rushton and Fooptube on suspicion of tax evasion. On April 14, 2009, the State charged Rushton with six tax crimes alleged to have been committed during calendar years 2006, 2007, and 2008 (the tax case). During the same time period, a number of Fooptube employees filed claims for unpaid wages with the Utah Labor Commission. Also at about this time, the United States Department of Labor's Employee Benefits Security Administration was investigating whether Rushton had failed to remit employee retirement contributions. At a review hearing in the tax case on May 5, 2009, Fooptube employees personally notified the tax commission investigator and the prosecutor of the wage claims. Rushton was arraigned in the tax case in December 2009, and in June 2010, he pleaded guilty to two charges pursuant to a plea agreement.

¶3     On April 20, 2011, the State filed this second case (the wage case) against Rushton, charging him with two second degree felony counts of communications fraud; two second degree felony counts of unlawful dealing with property by a fiduciary; two second degree felony counts of theft of services or, alternatively, twelve class A misdemeanor counts of failing to pay wages; and one second degree felony count of engaging in a pattern of unlawful activity for his failure to pay his employees an estimated $1.17 million in wages and his failure to remit an estimated $1.2 million in withheld retirement funds. Rushton moved to dismiss, arguing that his convictions in the tax case barred the State from prosecuting the wage case because the charges in the wage case were part of the same criminal episode as the charges in the tax case. The district court denied Rushton's motion, concluding that the two cases did not arise from a single criminal episode. The court explained that although the charges in both cases were "closely related in time," the conduct from which the respective charges arose was "not in furtherance of the same criminal objective." The court reasoned that there was not a single criminal objective because the "victim in the [tax] case is

the state of Utah" and "[t]he issue is . . . tax laws," while the wage case involves Rushton's alleged "defraud[ing of] his employees."[1] After the district court denied his motion, Rushton entered *Sery* pleas[2] to three counts. He now appeals the district court's refusal to dismiss the wage case.

ISSUE AND STANDARD OF REVIEW

¶4     Rushton challenges the district court's decision to deny his motion to dismiss the wage case. "A trial court's decision to grant or deny a motion to dismiss presents a question of law,

---

1. In the tax case, Rushton pleaded guilty to one count of failure to render personal tax returns and one count of engaging in a pattern of unlawful activity. The State of Utah is the victim of both of those crimes. Rushton's failure to pay taxes resulted in the state being deprived of funds legitimately owed to it. The pattern of unlawful activity conviction was based in part on Rushton's failure "to file or truthfully file corporate tax returns and remit employee withholding taxes" while operating Fooptube. But, in filing their own tax returns, Fooptube employees relied on Rushton's representation that the taxes had been remitted to the state on their behalf. The state therefore "applied [credits] for the benefit of such employees" in the amount of "about $585,917.89." Thus, the state shouldered the loss from the unpaid employee taxes.

    In the wage case, the employees are the victims because they were not paid wages for which they had worked and their retirement withholdings were never remitted.

2. A guilty plea entered pursuant to *State v. Sery*, 758 P.2d 935 (Utah Ct. App. 1988), is conditional. It permits a defendant to reserve the right to appeal an issue raised in the district court, such as the denial of the motion to dismiss in this case, and then to withdraw the plea if he or she is successful on appeal. *See id.* at 938.

which we review for correctness." *State v. Selzer*, 2013 UT App 3, ¶ 14, 294 P.3d 617 (citation and internal quotation marks omitted).

ANALYSIS

¶5    Rushton argues that in denying his motion to dismiss, the district court wrongly determined that the charges in the wage case did not arise out of the same criminal episode as the charges in the tax case. We conclude that the district court correctly denied Rushton's motion to dismiss.

¶6    Multiple charges arise from a single criminal episode if the conduct underlying the charges "is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76-1-401 (LexisNexis 2012).[3] Except under certain circumstances not relevant here, separate offenses arising out of a single criminal episode must be tried together when "(a) [t]he offenses are within the jurisdiction of a single court; and (b) [t]he offenses are known to the prosecuting attorney at the time the defendant is arraigned on the first information or indictment." *Id.* § 76-1-402(2). Failure to comply with this mandate may bar subsequent prosecution for conduct arising from the same criminal episode:

> If a defendant has been prosecuted for one or more offenses arising out of a single criminal episode, a subsequent prosecution for the same or a different offense arising out of the same criminal episode is barred if:

---

3. We refer to the current version of the Utah Code because the pertinent statutes do not differ substantively from the versions in effect at the time of the underlying offenses.

> (a) the subsequent prosecution is for an offense that was or should have been tried under [section 402(2)] in the former prosecution; and
>
> (b) the former prosecution:
>
>   (i)     resulted in acquittal;
>
>   (ii)    resulted in conviction;
>
>   (iii)   was improperly terminated; or
>
>   (iv)    was terminated by a final order or judgment for the defendant that has not been reversed, set aside, or vacated and that necessarily required a determination inconsistent with a fact that must be established to secure conviction in the subsequent prosecution.

*Id.* § 76-1-403(1) (LexisNexis Supp. 2014). "The purpose of such compulsory joinder is twofold: (1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation." *Selzer*, 2013 UT App 3, ¶ 22 (citation and internal quotation marks omitted).

¶7     It is undisputed that the offenses in both the wage case and the tax case fell within the jurisdiction of the district court and that conduct supporting the wage case was known to the prosecuting attorney at the time that Rushton was arraigned on the tax case.[4] *See* Utah Code Ann. § 76-1-402(2) (LexisNexis 2012). It is also undisputed that the State's prosecution in the tax case resulted in a conviction when Rushton entered his guilty pleas to two counts. *See id.* § 76-1-403(1)(b)(ii) (LexisNexis Supp. 2014). Thus, the only point of contention here is whether the tax

---

4. The State conceded the first factor in the district court, and the court made the latter finding in the face of the State's opposition. The State, however, "does not contest" the finding on appeal.

case charges and wage case charges arose out of a "single criminal episode" because they were closely related in time and were incident to the attempt or accomplishment of a single criminal objective. *See id.* § 76-1-401 (LexisNexis 2012).

¶8     The district court determined that the charges in each case did not arise from a single criminal episode because, although they were "closely related in time," the conduct from which the two sets of charges arose was "not in furtherance of the same criminal objective" where "the offense[s] in each case involved different victims." Rushton challenges the court's latter determination, arguing that the offenses in both cases were "incident to one criminal purpose, that of misappropriating corporate money from Fooptube." The State counters that the court correctly determined that the two sets of charges were not part of a single criminal episode because they had separate criminal objectives, that is, the offenses in the tax case were aimed at taking funds owed to the government while the offenses in the wage case were aimed at taking funds owed to the Fooptube employees.[5] The parties rely on a number of cases in support of their respective positions. Although all of these cases may help inform our decision, we consider it useful to first address the differing contexts in which they arose to explain why some are more useful than others in resolving the particular single criminal episode question here.

_____

5. The State also argues that the charges were not closely related in time. In doing so, however, the State does not directly challenge the district court's finding that they were. We do not specifically address the timing issue, however, other than to consider it as part of the context in which the crimes took place, because we affirm on the basis that Rushton did not have a single criminal objective in engaging in the conduct underlying each case.

### I. Categorization of Our Precedent

¶9 The cases cited by the parties seem to fit primarily into three categories: (1) cases that address whether a defendant's conduct could be charged as more than one offense or amounted to only a single offense, *see, e.g., State v. James*, 631 P.2d 854 (Utah 1981); *State v. Rasabout*, 2013 UT App 71, 299 P.3d 625, *cert. granted*, 308 P.3d 536 (Utah 2013); *State v. Mane*, 783 P.2d 61 (Utah Ct. App. 1989); *see also State v. Bauer*, 792 N.W.2d 825 (Minn. 2011); (2) cases that address whether separate offenses arguably arising from a single criminal episode must be tried together, *see, e.g., West Valley City v. Parkinson*, 2014 UT App 140, 329 P.3d 833; *State v. Selzer*, 2013 UT App 3, 294 P.3d 617; *State v. Strader*, 902 P.2d 638 (Utah Ct. App. 1995); and (3) cases that address whether separate offenses arguably arising from a single criminal episode may be tried separately, *see, e.g., State v. Mead*, 2001 UT 58, 27 P.3d 1115; *State v. Lopez*, 789 P.2d 39 (Utah Ct. App. 1990).

¶10 The first category of cases addresses the constitutional protection against double jeopardy. *Strader*, 902 P.2d at 642. Double jeopardy prevents "a defendant from being tried more than once for the same crime." *Id.* Although the concepts of single criminal episode and double jeopardy are distinct, the double jeopardy issue has been addressed within the single criminal episode framework. This may be because the enactment of the single criminal episode statutes resulted in an "expan[sion of] the scope of offenses barred from multiple trials beyond the same offense focus in double jeopardy, to all offenses arising from a single criminal episode." *Id.* at 641 (citation and internal quotation marks omitted); *State v. Sommerville*, 2013 UT App 40, ¶ 7, 297 P.3d 665 (explaining that the single criminal episode statutes were primarily "designed to protect a defendant from multiple trials for offenses that are part of a single criminal episode" (citation and internal quotation marks omitted)). In other words, the single criminal episode statutes seem to extend the protection against multiple prosecutions encompassed within the double jeopardy doctrine from single offenses to separate offenses arising out a single criminal episode. It may be

because of this expansion that the single criminal episode statutes include a provision emphasizing that they are not intended to undermine double jeopardy protection:

> A defendant may be prosecuted in a single criminal action for all separate offenses arising out of a single criminal episode; however, when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision; an acquittal or conviction and sentence under any such provision bars a prosecution under any other such provision.

Utah Code Ann. § 76-1-402(1) (LexisNexis 2012); *see, e.g.*, *Mane*, 783 P.2d at 63–65 (using this provision of the single criminal episode statutes in its analysis of whether there was one or more crimes committed). In this first category of cases, where the primary focus is double jeopardy, the courts have taken "a very narrow perspective, focusing on whether a subsequent prosecution is for the same offense" as the first prosecution.[6] *Strader*, 902 P.2d at 642 (emphasis omitted).

---

6. Though our courts have addressed single criminal episode concerns in cases raising double jeopardy issues, we are not convinced that this first category actually provides much guidance on single criminal episode questions such as the one presented here because, in the end, double jeopardy is not concerned with whether multiple offenses arose out of the same criminal episode but rather with whether particular conduct constitutes a single offense or multiple offenses. Because Rushton has relied on cases from this category and at times our decisions have used a single criminal episode framework as an analytical tool in the context of a double jeopardy issue, we include it within our categorization of case precedent.

¶11    In the second category of cases, the appellate court's focus is on the compulsory joinder requirement established in Utah Code section 76-1-402(2); these cases directly address whether separate offenses arising from a single criminal episode must be prosecuted together. In these cases, the defendant's conduct constitutes more than one prosecutable offense and the issue is whether the offenses arose from a single criminal episode so as to bar separate prosecutions in the interest of judicial economy and finality for the defendant. *See, e.g.*, *Selzer*, 2013 UT App 3, ¶ 22. We have concluded that this type of claim is "comparable to asserting double jeopardy." *Strader*, 902 P.2d at 642. Thus, "'it is appropriate to take a narrow, rather than an expansive, view of what [a single criminal episode] entails.'" *Selzer*, 2013 UT App 3, ¶ 26 (alteration in original) (quoting *Strader*, 902 P.2d at 642).

¶12    Finally, in the third category of cases, appellate courts are concerned with whether the mandatory joinder of multiple charges in a single prosecution deprives one or both parties of a fair trial. *See, e.g.*, *Lopez*, 789 P.2d at 42 (noting that severance is available if trying charges together would prejudice either the prosecution or the defense). Consequently, there are two related issues that arise in these cases. The first is whether the offenses occurred as part of a single criminal episode so that they should ordinarily be tried together, and the second, which arises only if they did, is whether trying the charges together in the particular case would result in undue prejudice to either party. *Strader*, 902 P.2d at 641 n.6. In this context then, "[a]n expansive interpretation of 'single criminal episode' is appropriate." *Id.* at 641.

¶13    There are sound reasons for employing a narrow interpretation of single criminal episode in the first two categories while using a more expansive interpretation in the third category. The single criminal episode statutes serve to "expand the scope of offenses barred from multiple trials beyond the same offense focus in double jeopardy to all offenses arising from a single criminal episode." *Id.* (citation and internal quotation marks omitted). In doing this, the legislature sought to promote judicial economy and to protect defendants by

requiring joinder into a single trial any charges arising from conduct that was close in time and done in furtherance of the same criminal objective. *Id.*; *accord Selzer*, 2013 UT App 3, ¶ 22. But these same concerns for judicial economy and protection of defendants simply do not arise when the conduct is not part of a single criminal episode because the offenses do not share an intertwined factual or legal history that makes separate prosecutions inefficient or repetitive. A narrow perspective thus serves to ensure that the joinder requirement does not unduly preclude prosecution for charges that do not arise out of a single criminal episode.

¶14   On the other hand, when one of the parties challenges joinder for trial, that party is concerned about the prejudice that may inure to the party's position if the charges are heard together. An expansive view of single criminal episode allows the trial court to more readily balance the interest in judicial economy that the joinder requirement serves with the defendant's constitutional right to a fair trial and the State's interest in a fair prosecution. *See State v. Strader*, 902 P.2d 638, 641 n.6 (Utah Ct. App. 1995). Moreover, "because appellate courts review decisions regarding joinder or severance of offenses only for abuse of discretion, it follows that the reviewing court would, as a practical matter, take a broad view of what constitutes a single criminal episode in that context." *Id.* at 641–42 (citations omitted).

¶15   Given the question before us in this case—whether the tax offenses and wage offenses all arise from a single criminal episode so as to bar the prosecution in the wage case—cases in the second category are the most useful because they are directly on point. The first category of cases provides only limited guidance because although the cases use the same narrow standard for determining whether conduct arises from a single criminal episode, they are more directly focused on the double jeopardy-related question of whether the conduct constitutes a single offense or can legitimately be prosecuted as different offenses. Here, there is no dispute that Rushton's conduct constituted more than one offense that could be punished under

multiple code provisions. The severance-related cases in the third category are even less instructive as they employ a much broader standard for assessing whether offenses arise from the same criminal episode because the focus is on prejudice at trial.[7] We therefore rely primarily on the second category of cases in assessing whether Rushton's charges arose from a single criminal episode so as to warrant compulsory joinder.

## II. Single Criminal Objective

¶16　The only issue before us in assessing whether the tax case and the wage case arose from a single criminal episode is whether the conduct underlying those charges was "incident to

---

7. While no prior case appears to have explicitly categorized the existing case law as we have done here, Utah appellate courts have long utilized these categories in analyzing the questions that arise under the single criminal episode statutes. *See West Valley City v. Parkinson*, 2014 UT App 140, ¶¶ 6–8, 329 P.3d 833 (relying on multiple-prosecution cases to determine whether a separate crime arose out of the same criminal episode as an earlier prosecuted offense so as to bar a subsequent prosecution); *State v. Strader*, 902 P.2d 638, 642 n.7 (Utah Ct. App. 1995) (observing that the defendant's reliance on severance cases was unpersuasive where the question presented for appeal involved whether multiple prosecutions were appropriate); *id.* at 642 n.5 (noting that "cases considering whether offenses are separate for double jeopardy purposes are not applicable in single criminal episode cases contesting the court's decision to join offenses" (citation and internal quotation marks omitted)); *State v. Lopez*, 789 P.2d 39, 44 (Utah Ct. App. 1990) (stating that "the line of cases relied upon by defendant to establish that the present circumstances were not part of a single criminal episode are not applicable because they do not deal with the issues of joinder and severance of charges, but with determining if criminal acts are separate for double jeopardy purposes").

an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76-1-401 (LexisNexis 2012). "Whether or not there is a single criminal objective 'depends on the specific facts of the case viewed under . . . the totality of the circumstances.'" *State v. Selzer*, 2013 UT App 3, ¶ 26, 294 P.3d 617 (omission in original) (quoting *Strader*, 902 P.2d at 642). In assessing the circumstances, a court must "focus[] more on a defendant's actions," and not on external factors that may link the charges together, to determine whether "objectively" the conduct is "incident to an attempt or an accomplishment of a single criminal objective." *West Valley City v. Parkinson*, 2014 UT App 140, ¶ 7, 329 P.3d 833 (citation and internal quotation marks omitted).

¶17    In applying the definition of single criminal episode, case law within the second category suggests that a recurring concern is whether the commission of one crime is aimed at furthering the accomplishment of the other crime. For example, in *West Valley City v. Parkinson*, 2014 UT App 140, 329 P.3d 833, police responded to a call of domestic violence to find that the defendant was no longer at the home. *Id.* ¶ 2. While one officer was interviewing the victim, the officer saw the defendant drive by the house. *Id.* Based on his interview with the victim, the officer believed that the defendant had a child in the car, and he therefore attempted to stop the vehicle through hand gestures and verbal commands. *Id.* The defendant failed to stop, and the officer pursued by vehicle, eventually apprehending the defendant. *Id.* After being charged with four misdemeanor domestic violence charges in justice court, the defendant pleaded guilty to misdemeanor domestic violence assault. *Id.* ¶ 3. About one week after the defendant's guilty plea, the City filed an information in district court charging the defendant with crimes related to the police chase. *Id.* ¶ 4. On the defendant's motion, the district court concluded that the new charges were part of the same criminal episode as the domestic violence charges and dismissed them. *Id.* The City appealed, and we reversed, concluding that "the domestic violence charges filed with the justice court and the conduct for which charges were filed in

the district court did not share a common criminal objective." *Id.* ¶ 7. We reasoned that, viewing the circumstances in an objective manner and with a narrow view of "single criminal episode," the defendant's actions in leaving the scene once the police had been called were "not incident to the accomplishment of his domestic violence objectives," which were to "harm[] or frighten[]" the victim, but rather were "motivated by [the defendant]'s objective of eluding police." *Id.* ¶ 9.

¶18 Likewise, in *State v. Strader*, 902 P.2d 638 (Utah Ct. App. 1995), we concluded that the defendant's actions in stealing a circular saw, providing false identification, and possessing drugs did not have a single criminal objective. *Id.* at 639, 643. There, an officer pulled over the defendant's vehicle after the officer saw the defendant enter a construction site and return to his car carrying an object. *Id.* at 639. When asked for identification, the defendant gave his correct name but provided the officer with a clearly altered license that had a false name on it. *Id.* The officer arrested the defendant for false identification and, in a search incident to impounding the car, discovered methamphetamine as well as the object (a stolen circular saw) that the officer had seen the defendant carrying from the construction site. *Id.* The defendant pleaded guilty to the false identification charge. *Id.* at 640. Later that month, the State filed charges for all three offenses: theft, false identification, and possession of a controlled substance. *Id.* The defendant moved to dismiss, arguing that the conduct arose from a single criminal episode for which he had already been prosecuted. *Id.* The district court denied the defendant's motion, except as to the false identification charge to which the defendant had already pleaded guilty. *Id.* The defendant then entered a plea agreement under which he would plead guilty to the possession charge in exchange for the dismissal of the theft charge and the right to appeal the denial of the motion to dismiss. *Id.*

¶19 On appeal, we affirmed the district court's denial of the motion to dismiss. *Id.* at 643–44. Again taking a narrow view of what constituted a single criminal episode, we reasoned that the "only possible nexus between the crimes was [the defendant's]

intent to avoid arrest on the [theft and possession] charges by giving false identification." *Id.* Yet the defendant's provision of "a forged driver's license [that he had] at hand seem[ed] to indicate that obscuring his identity was an ongoing and routine course of conduct" and was "not specifically done to somehow further his theft or drug possession activities." *Id.*; *see also Selzer*, 2013 UT App 3, ¶¶ 3–5, 26 (concluding that a sexual assault followed by a physical assault on the same victim nearly three hours later did not share a criminal objective because the acts were conducted for "very different purpose[s]" in that the physical assault, which was an act of "rage," did not further the defendant's purpose in committing the earlier sexual assault, which was done to fulfill the defendant's desire for "sexual gratification and domination of the victim in a sexual act" (internal quotation marks omitted)).

¶20   Considering the totality of the circumstances of this case, we conclude that as in *Parkinson* and *Strader*, Rushton's actions in the wage case and the tax case were not incident to the accomplishment of a single criminal objective. Rather, the crimes in each case are entirely separate. In the tax case, Rushton's actions involved taking funds owed to the *government* by failing to pay taxes and falsifying withholding-tax statements and W-2s, while in the wage case, he took funds owed to *employees* when he failed to pay earned wages and to remit withheld retirement savings to the designated retirement funds. And although Rushton contends that the activities underlying each case had the common purpose of keeping Fooptube afloat, keeping a company financially stable is a lawful objective, not a criminal one. Rather, his criminal objective in each case was to steal money to which he was not entitled.

¶21   Moreover, Rushton's actions in stealing from employees did not further his objective of stealing from the government, even if it did advance his ultimate goal of keeping Fooptube financially viable. And Rushton's argument that the crimes were linked by his ultimate goal of unlawfully appropriating the money of others views his "objective" from too elevated a vantage point. The narrow label of single criminal objective is

not meant to encompass such a broad criminal goal because if it did, then almost any series of crimes committed for the purpose of illegally obtaining money, say to feed a drug habit, could be described as "single."[8] Rather, the fact that the thefts ultimately benefitted the same company is merely an external factor that provides some link between the offenses, but it does not appropriately "focus[] more on the defendant's actions" or his purpose in committing the acts.[9] *See Parkinson*, 2014 UT App 140, ¶ 7.

---

8. Indeed, from this viewpoint, a defendant's entering an apartment building first to steal dimes from its laundry room and then to steal money or other items of value from an apartment unit ought to meet the single criminal objective requirement. *See State v. Porter*, 705 P.2d 1174, 1176–78 (Utah 1985). Yet, the Utah Supreme Court concluded that these activities constituted two separate burglary offenses despite the defendant's apparent common objective of stealing as much as possible from a single building. *Id.* at 1178 (considering whether the defendant could be prosecuted for more than one crime for activities arising out a single criminal episode); *cf. State v. Bauer*, 792 N.W.2d 825, 830 (Minn. 2011) (explaining, in the context of determining that the State's decision to charge the defendant with both the sale of a controlled substance and failure to affix tax stamps to a controlled substance did not punish the same conduct twice, that "the criminal plan of obtaining as much money as possible is too broad an objective to constitute a single criminal goal" (citation and internal quotation marks omitted)).

9. That conclusion is underscored by the fact that Rushton's actions in stealing from the government and stealing from the employees, though characterized by the district court as occurring "close in time" due to the overlap in their commission, also had some temporal distinctions. Rushton falsified tax documents and failed to pay taxes from 2006 until June 2008, which was about the time that the state tax commission began

(continued...)

¶22   We are unpersuaded by Rushton's other arguments for treating the wage case and the tax case as having the same criminal objective. For instance, Rushton argues that less emphasis should be placed on the number of victims because even when there are multiple victims, the underlying actions can still arise from a single criminal episode. In support of his position, Rushton cites several cases where the defendant was tried on multiple charges resulting from his actions toward multiple victims.

¶23   The cases Rushton relies on, which fall into category one, do not support his contention. In the cited cases, the defendants had already been prosecuted (in one trial) for multiple offenses and were appealing on the basis that the convictions constituted multiple punishments for the same conduct. Thus, the analysis on appeal focused on whether the defendant was properly convicted for multiple offenses, not on the issue presented here—whether the defendant's actions against multiple victims were aimed at the accomplishment of a single criminal objective so as to mandate their prosecution together. For example, in *State v. James*, 631 P.2d 854 (Utah 1981), the defendant was convicted on five counts of aggravated kidnapping for taking five people hostage during a drugstore robbery. *Id.* at 855. On appeal, the defendant argued that "his actions constituted a

_____

(…continued)

investigating him on suspicion of tax evasion. Although Rushton also stopped paying employees their wages and remitting their retirement withholdings sometime in 2008, that conduct continued through 2009, well after Rushton had ceased his tax-related crimes. That Rushton stopped his tax scheme and turned to stealing money owed to his employees around that same time supports a determination that these two sets of criminal activities were not part of a single criminal objective but rather were two separate illegal means for achieving the ultimate goal of keeping the business afloat.

single criminal act, hence his constitutional right to not be twice placed in jeopardy for the same offense was violated." *Id.* The Utah Supreme Court concluded that double jeopardy did not preclude multiple convictions because "offenses committed against multiple victims are not the same." *Id.* at 856; *see also State v. Rasabout*, 2013 UT App 71, ¶¶ 10, 12, 33, 299 P.3d 625 (stating, in the course of reversing the trial court's merger of twelve discharge of a firearm convictions, that whether the charges arose out of a single criminal episode "does not resolve the question" because the issue presented in the case "was one of multiplicity and double jeopardy"), *cert. granted*, 308 P.3d 536 (Utah 2013); *State v. Mane*, 783 P.2d 61, 63 (Utah Ct. App. 1989) (addressing "whether a single criminal act resulting in multiple victims constitutes a single offense or multiple offenses").

¶24   In short, Rushton has not shown that the district court erred in deciding as it did. *See State v. Selzer*, 2013 UT App 3, ¶ 27, 294 P.3d 617 (affirming the district court's denial of a motion to dismiss because although "other possible interpretations of [the defendant's] actions may be possible, the district court could certainly have accepted the State's argument and determined that the sexual assaults and [the physical] assault did not share a single criminal objective"); *cf. State v. Ireland*, 570 P.2d 1206, 1207 (Utah 1977) (concluding that although the defendant made a plausible argument that "all [his] acts were directed toward escape," "the facts adequately support[ed] the trial court's determination that two separate and distinct offenses were committed").

¶25 For these reasons, we affirm the district court's determination that Rushton's actions in the wage case were not incident to or in furtherance of his purpose in the tax case because the two sets of charges did not share a single criminal objective. Accordingly, the district court correctly denied Rushton's motion to dismiss.

CONCLUSION

¶26   We conclude that there was a basis for the district court's decision that the actions underlying the wage case were not incident to the accomplishment of the criminal objective in the tax case. Consequently, the two sets of charges could properly be prosecuted in two separate actions and denial of the motion to dismiss was correct. We therefore affirm Rushton's convictions.

———————