2013 UT App 3

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

JON SELZER,
*Defendant and Appellant.*

Opinion
No. 20090352-CA
Filed January 4, 2013

Fourth District, Provo Department
The Honorable Gary D. Stott
No. 081401643

Ann P. Boyle and Michael D. Esplin, Attorneys for Appellant
Mark L. Shurtleff and Ryan D. Tenney, Attorneys for Appellee

JUDGE WILLIAM A.THORNE JR. authored this Opinion,
in which JUDGE CAROLYN B. MCHUGH
and JUDGE J. FREDERIC VOROS JR. concurred.

THORNE, Judge:

¶1     Jon Selzer appeals from his convictions on two counts of aggravated sexual assault, arguing that he received ineffective assistance of counsel and that his convictions are barred by the rule against multiple prosecutions arising from a single criminal episode. We affirm.

BACKGROUND[1]

¶2     Selzer and his live-in girlfriend, S.G., spent the day and evening of May 31, 2008, drinking vodka together in their home and continued doing so into the early morning hours of June 1. Around 3:00 a.m., Selzer got into the shower and S.G. joined him. S.G. thought that Selzer was behaving strangely in the shower, and she got out of the shower and went to the couple's bedroom.

¶3     As S.G. was toweling off, Selzer entered the bedroom and demanded oral sex. S.G. said no and told him, "I don't want to do this." Selzer responded, "You're my woman. You're supposed to do these things." Selzer then forced S.G. to perform oral sex on him. S.G. did not attempt to pull away because she was scared of the way that Selzer was acting. Selzer then told S.G. to lie down on the bed and had intercourse with her. S.G. repeatedly told him to stop and to get off of her, and Selzer responded by squeezing her throat with his hand. S.G. continued to resist until Selzer finally stopped.

¶4     S.G. was distraught and went to the kitchen to have a drink and calm down. She eventually decided to walk to a nearby gas station to buy cigarettes, and Selzer joined her. On the way to the store, Selzer knocked S.G. to the ground and began hitting her and verbally berating her. Selzer continued this behavior until they reached the gas station at about 5:45 a.m., where the two entered and made their cigarette purchase. As soon as they left the gas station, Selzer began hitting S.G. again. The gas station attendant saw this assault and heard S.G. yell, "[P]lease, please don't hurt me any more." The attendant called 911, and police officers arrived to see Selzer with his hands around S.G.'s neck.

---

[1]We recite the facts in the light most favorable to the jury's verdict. *See State v. Jeffs*, 2010 UT 49, ¶ 3, 243 P.3d 1250.

¶5     The officers arrested Selzer, who admitted to them that he had been "pushing [S.G.] around . . . a little." S.G. was hysterical and told the officers that Selzer had been trying to kill her. The officers observed that S.G. had red marks on her face, had cuts and scrapes on her arms and hands, and was bleeding from the mouth. However, S.G. did not inform officers at this time that Selzer had also sexually assaulted her.

¶6     After Selzer was arrested, S.G. went home to care for her child and eventually took the child to his father's motel room, where S.G. slept the rest of the day. When she awoke in the evening, her child's father convinced her that she should go to the hospital to get examined. She went to the emergency room and informed medical personnel that she had been sexually assaulted. She was then examined by Dr. Steven Embley and Susan Chasson, a trained sexual assault nurse. The examination revealed a small tear on S.G.'s labia as well as redness to the roof of S.G.'s mouth.

¶7     Selzer's physical and sexual assaults on S.G. resulted in two separate prosecutions. On June 2, 2008, the Provo City prosecutor's office charged Selzer in district court with class B misdemeanor assault and class A misdemeanor violation of a domestic violence no-contact order. The assault charge related to Selzer's hitting and choking S.G. at the gas station. The violation of a no-contact order apparently occurred shortly after Selzer had been arrested, when he phoned S.G. and began berating her again. Selzer was arraigned on these charges on June 12 and pleaded guilty to both charges on August 21.

¶8     On June 10, 2008, the Utah County Attorney initiated the instant prosecution by charging Selzer with two first degree felony counts of aggravated sexual assault and one third degree felony count of domestic violence aggravated assault.[2] These charges

---

[2]The June 10 information also included one count of retaliation against a witness and one count of domestic violence

(continued...)

arose from S.G.'s interview with police following her sexual assault report and examination. On November 12, 2008, Selzer filed a motion to dismiss all of the outstanding charges against him, alleging that they arose out of a single criminal episode which included the misdemeanor assault (the gas station assault) that he had pleaded guilty to in the separate prosecution by Provo City and were therefore barred by Utah Code sections 76-1-402 and -403. *See generally* Utah Code Ann. § 76-1-402 (LexisNexis 2008) (requiring that multiple offenses arising out of a single criminal episode generally be tried in a single trial); *id.* § 76-1-403 (generally barring subsequent prosecutions after an initial prosecution for offenses arising out of a single criminal episode). The district court granted Selzer's motion as to the domestic violence aggravated assault charge, but allowed the aggravated sexual assault charges to proceed to trial.

¶9     Prior to trial, the State gave notice that it intended to call Dr. Embley and Nurse Chasson as expert witnesses regarding their examination of S.G. Thereafter, Selzer successfully sought a trial continuance to prepare a response to Embley and Chasson's testimony. Selzer's counsel had difficulty contacting his preferred sexual assault expert, Sue Bryner-Brown, and was referred to another sexual assault nurse, Diane Crockett. Crockett reviewed the S.G. examination report and pictures of S.G.'s injuries and concluded that the injuries to S.G.'s mouth and labia were consistent with both consensual and nonconsensual sexual activity. Selzer's counsel asked Crockett if the State's experts would have to concede that the injuries were consistent with consensual as well as nonconsensual sex, and Crockett told him that she thought they would have to. Relying on Crockett's evaluation and advice, Selzer's counsel did not interview the State's experts, nor did he retain Crockett or any other expert to testify at trial.

---

[2](...continued)
in the presence of a child, but those charges were dismissed at Selzer's preliminary hearing.

¶10    At trial, Embley and Chasson both testified that S.G.'s injuries were consistent with nonconsensual sex. Further, and particularly with regard to the labial tearing, both experts testified that the injuries were unlikely to have resulted from consensual sex. Chasson testified that she had never seen a mouth injury similar to S.G.'s outside of the context of sexual assault and that she had never seen a similar labial injury resulting from consensual sexual activity. However, both experts conceded that it was possible that the injuries to S.G.'s mouth and labia were not caused by forcible sex. S.G., the gas station attendant, and Selzer himself also testified at trial. The jury ultimately convicted Selzer on both aggravated sexual assault counts, and he now appeals.

¶11    This court granted Selzer's request for a rule 23B remand to address the issue of trial counsel's effectiveness regarding the decision not to present expert testimony that S.G.'s mouth and labia injuries were consistent with consensual sexual activity. *See generally* Utah R. App. P. 23B (allowing an appellate court to remand a criminal matter to the trial court for entry of findings of fact necessary for the appellate court's determination of a claim of ineffective assistance of counsel). On remand, the district court heard testimony from Selzer's trial counsel and from Bryner-Brown, the sexual assault nurse counsel had attempted to contact before trial.

¶12    Among the district court's factual findings after the hearing were that Selzer's counsel was surprised by Chasson's trial testimony that she had never seen similar injuries resulting from consensual sex, that counsel was unable to refute Chasson's testimony because he had not retained an expert, and that counsel believed this failure was prejudicial to Selzer because the remaining testimony against him was not overwhelming. The district court also found that Bryner-Brown would have testified that the redness to the roof of S.G.'s mouth could have been caused by many things besides forced oral sex, that the hallmark injuries of forced oral sex—bruising to the back of the throat and the back of the lips—were not present, that she had seen greater labial injuries

resulting from consensual sex, and that labial injuries similar to S.G.'s were just as consistent with consensual sex as with nonconsensual sex.

ISSUES AND STANDARDS OF REVIEW

¶13    On appeal, Selzer argues that his trial counsel provided ineffective assistance by failing to adequately investigate the State's experts and failing to present rebuttal expert testimony that S.G.'s mouth and labia injuries were consistent with consensual sex. "In ruling on an ineffective assistance claim following a [r]ule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness." *State v. Arriaga*, 2012 UT App 295, ¶ 11, 288 P.3d 588 (alteration in original) (citation and internal quotation marks omitted).

¶14    Selzer also argues that his convictions are barred because they arise from the same criminal episode as the misdemeanor assault to which he had previously pleaded guilty. Therefore, Selzer argues, the district court erred when it denied his motion to dismiss. "A trial court's decision to grant or deny a motion to dismiss presents a question of law, which we review for correctness." *State v. Horrocks*, 2001 UT App 4, ¶ 10, 17 P.3d 1145.

ANALYSIS

I. Ineffective Assistance of Counsel

¶15    Selzer first argues that his trial counsel performed ineffectively by failing to adequately prepare for and counter the testimony of the State's expert witnesses. Specifically, Selzer argues that his trial counsel had a duty to interview Embley and Chasson prior to trial and that these interviews would have revealed the need to retain a defense expert to testify that S.G.'s mouth and labia injuries were consistent with consensual sex.

¶16    To succeed on his ineffective assistance of counsel claim, Selzer must show that "(1) trial counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him." *State v. Chacon*, 962 P.2d 48, 50 (Utah 1998); *see also Strickland v. Washington*, 466 U.S. 668, 686–87 (1984). "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Taylor v. State*, 2012 UT 5, ¶ 54, 270 P.3d 471 (citation and internal quotation marks omitted). Selzer "bears the burden to rebut this strong presumption, which he must do by identify[ing] the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *State v. Hutchings*, 2012 UT 50, ¶ 18, 285 P.3d 1183 (alteration in original) (citation and internal quotation marks omitted). Further, to establish prejudice, Selzer must "illustrate that, absent those acts or omissions, there is a reasonable probability of a more favorable result." *State v. King*, 2010 UT App 396, ¶ 20, 248 P.3d 984 (citation and internal quotation marks omitted); *see also Strickland*, 466 U.S. at 694.

¶17    Selzer argues that his counsel failed to conduct an adequate investigation into the likely testimony of the State's expert witnesses, and that this failure to investigate and the resulting failure to call a defense expert constitutes deficient performance on the part of counsel. *See generally Houskeeper v. State*, 2008 UT 78, ¶ 38, 197 P.3d 636 ("This court has found that counsel's performance falls below an objective standard of reasonableness when counsel does not make a reasonable investigation into the availability of prospective witnesses." (internal quotation marks omitted)); *State v. Templin*, 805 P.2d 182, 188 (Utah 1990) ("[A] decision not to investigate cannot be considered a tactical decision. It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons."). Selzer analogizes his case to *State v. Hales*, 2007 UT 14, 152 P.3d 321, in which the Utah Supreme Court reversed a shaken-baby murder conviction due to defense counsel's failure to adequately investigate a CT scan of the victim's brain injuries.

¶18    We disagree with Selzer's characterization of his counsel's actions and determine that counsel did conduct a sufficient investigation to justify his decision not to present a defense expert. Here, counsel obtained a trial continuance to prepare for the State's expert witnesses and had Crockett, a qualified expert, review S.G.'s sexual assault examination report and pictures of her mouth and labia injuries. Crockett determined that, in her opinion, S.G.'s injuries were consistent with consensual as well as nonconsensual sex. Crockett further assured Selzer's counsel that the State's own experts would have to concede as much. Selzer's counsel reasonably relied on Crockett's opinion, and it was not deficient performance for him to have done so. *See Archuleta v. Galetka*, 2011 UT 73, ¶ 129, 267 P.3d 232 ("[C]ourts have long held that it is reasonable for counsel to rely on the judgment and recommendations of qualified experts with expertise beyond counsel's knowledge.").

¶19    Further, this case is readily distinguishable from *Hales*. In *Hales*, trial counsel's "failure to hire a qualified expert to review the CT scans constituted a failure to conduct an adequate investigation." *See* 2007 UT 14, ¶ 69. By contrast, Selzer's trial counsel had Crockett review S.G.'s examination report and pictures of her injuries, and it is undisputed that Crockett was a qualified expert.[3] Once Crockett advised Selzer's counsel that the State's experts would have to concede that S.G.'s injuries were not inconsistent with consensual sex, counsel acted reasonably in relying on Crockett's advice and attempting to counter the State's experts with cross-examination rather than presenting a separate defense expert. *See generally id.* ¶ 80 ("[I]n many circumstances defense attorneys may reasonably decide to rebut an expert's testimony without hiring a competing expert . . . .").

---

    [3]At the rule 23B remand hearing, Bryner-Brown testified that she had personally trained Crockett, that Crockett was qualified to "give good accurate medical opinions," and that Selzer's counsel had made a "good choice" when he consulted with Crockett.

¶20    We are also not convinced by Selzer's argument that his counsel's handling of the State's expert testimony was prejudicial. The State's primary evidence against Selzer was S.G.'s testimony that Selzer had sexually assaulted her, and we disagree with Selzer's assertions on appeal that "[S.G.'s] testimony at trial was not credible" and that "the jury was left to determine whether the sexual activity between Selzer and [S.G.] was consensual or non-consensual solely on the testimony of the State's Expert Witnesses."[4] Furthermore, both of the State's experts repeatedly testified—consistent with Crockett's pre-trial assessment—that S.G.'s injuries could have occurred during consensual sex. We see no reason to believe that the jury's assessment of S.G.'s credibility would have been significantly altered had counsel retained Crockett to testify at trial.[5] Therefore, Selzer has failed to demon

---

[4]Selzer's allegation on appeal that S.G.'s testimony was not credible is based on certain false or inconsistent statements that S.G. had made to police in an effort to conceal the fact that she had left her young child alone and unattended when she went with Selzer to buy cigarettes. None of the inconsistencies or falsehoods identified by Selzer bore directly on the issue of consent. We also note that Selzer's own testimony on the consent issue was less than compelling, including his statements that S.G. was "my woman when we were together" and, "She don't have to do anything she don't want to, but they are things that people claim to whatever when they consider someone some-thing, you know what I mean?" Other testimony by Selzer that may not have helped his case included his assessment that his beating of S.G. was "probably not acceptable" but was "nothing to how she was getting beat up by her boyfriend" and his final statement on cross-examination: "She'll live. She's a strong woman. She'll get over it, but all this right here[—the prosecu-tion and trial—]isn't necessary."

[5]Selzer makes no direct argument on appeal that his counsel should have retained Bryner-Brown as a trial expert. He

(continued...)

strate a "reasonable probability of a more favorable result" had his counsel interviewed the State's experts and presented Crockett's testimony at trial. *See King*, 2010 UT App 396, ¶ 20 (citation and internal quotation marks omitted).

## II. Single Criminal Episode

¶21    Selzer next argues that his aggravated sexual assault convictions are barred because they resulted from the same "single criminal episode" as his previous conviction for the gas station assault. *See generally* Utah Code Ann. § 76-1-401 (LexisNexis 2008) (defining "single criminal episode"); *id.* § 76-1-402 (generally requiring that offenses arising out of a single criminal episode be tried together); *id.* § 76-1-403 (barring subsequent prosecutions for offenses that were or should have been tried in a prior prosecution as arising from the same single criminal episode). Selzer raised this argument in the district court by filing a motion to dismiss, which the court denied. We affirm the district court's ruling.

¶22    Utah Code section 76-1-403(1) states,

> If a defendant has been prosecuted for one or more offenses arising out of a single criminal episode, a subsequent prosecution for the same or a different offense arising out of the same criminal episode is barred if:

---

[5](...continued)
does, however, seem to assume that either Bryner-Brown or Crockett would have testified consistently with Bryner-Brown's remand hearing testimony. We note that the State argues that if Selzer's counsel had elected to call an expert at trial, it would likely have been Crockett rather than Bryner-Brown because counsel had been unable to contact Bryner-Brown when he attempted to do so. We also note that Crockett's pretrial assessment was much less favorable to Selzer's defense than Bryner-Brown's later testimony at the remand hearing.

> (a) The subsequent prosecution is for an offense that was or should have been tried under Subsection 76-1-402(2) in the former prosecution; and
> (b) The former prosecution:
>> (i) resulted in acquittal; or
>> (ii) resulted in conviction . . . .

*Id.* § 76-1-403(1). Utah Code section 76-1-402(2) provides that unless the trial court orders otherwise to promote justice, separate offenses arising from a single criminal episode must be tried in a single proceeding so long as "(a) [t]he offenses are within the jurisdiction of a single court; and (b) [t]he offenses are known to the prosecuting attorney at the time the defendant is arraigned on the first information or indictment." *Id.* § 76-1-402(2). The purpose of such compulsory joinder statutes "is twofold: (1) to protect a defendant from the governmental harassment of being subjected to successive trials for offenses stemming from the same criminal episode; and (2) to ensure finality without unduly burdening the judicial process by repetitious litigation." *Commonwealth v. Fithian*, 961 A.2d 66, 75–76 (Pa. 2008) (citation and internal quotation marks omitted).

¶23 Here, it is undisputed that Selzer was subjected to a prior prosecution that resulted in his conviction on the gas station assault.[6] It is also readily apparent that a single court—the district court—would have had jurisdiction over all of the charges against Selzer had they been charged in one information. *See* Utah Code Ann. § 78A-5-102(1), (8)(c) (LexisNexis 2008) (stating that the district court "has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited

---

[6]Selzer pleaded guilty to the gas station assault charge, and his guilty plea constitutes a conviction for purposes of Utah Code section 76-1-403. *See* Utah Code Ann. § 76-1-403(3) (LexisNexis 2008) ("There is a conviction if the [prior] prosecution resulted in . . . a plea of guilty accepted by the court.").

by law" and has jurisdiction over class B misdemeanors when "they are included in an indictment or information covering a single criminal episode alleging the commission of a felony or a class A misdemeanor"). Thus, Selzer's present convictions would be barred if the sexual assaults arose out of the same single criminal episode as the gas station assault and if the Provo City prosecutor knew about the sexual assaults when Selzer was arraigned on the gas station assault charge.[7]

¶24    When the district court denied Selzer's motion to dismiss, it did not make express findings on either of these two issues, ruling only that "[the] State is permitted to proceed with respect to the sexual charges." Further, Selzer did not request that the district court clarify its ruling and enunciate its exact reasoning. Under these circumstances, Selzer must demonstrate that there was no viable reason for the district court to deny his motion to dismiss, i.e., Selzer must establish on appeal that there was only a single criminal episode *and* that the first prosecutor knew about the sexual assaults when Selzer was arraigned on the gas station assault charge. *Cf. State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448 (discussing the appellant's burden to overcome the presumption that "a lower court has conducted its affairs properly and that the outcome of its process is sufficiently supported in law and fact"); *State v. Hurt*, 2010 UT App 33, ¶¶ 15–16, 227 P.3d 271 (requiring an appellant to challenge the grounds underlying the denial of a suppression motion). We determine that the district court could have properly denied Selzer's motion because the charges did not

---

[7]We recognize that the Provo City prosecutor could not have charged Selzer with the felony sexual assaults even if he had been aware of S.G.'s allegations. *See* Utah Code Ann. § 10-3-928(2) (LexisNexis 2007) (granting city attorneys authority to prosecute "infractions and misdemeanors"). However, Provo City could have coordinated with the Utah County Attorney's office to ensure that the gas station assault and the sexual assaults were properly prosecuted in a single district court action.

arise from a single criminal episode, or because the prosecutor in the gas station assault prosecution was unaware of the sexual assaults, or both.

¶25    Under the circumstances presented by these facts, the district court could have properly concluded that the sexual assaults and the gas station assault did not arise from a single criminal episode. A "single criminal episode" is defined by statute as "all conduct which is closely related in time *and* is incident to an attempt or an accomplishment of a single criminal objective." Utah Code Ann. § 76-1-401 (emphasis added). Thus, the statute requires both temporal proximity and a single criminal objective. *See, e.g.,* *State v. Mead*, 2001 UT 58, ¶ 56, 27 P.3d 1115 (applying the single criminal episode definition). The incidents at issue in this case, which took place within the course of three hours or so, may not satisfy the "closely related in time" requirement in light of the pause in events between the sexual assaults and the decision to leave the apartment and walk to the gas station.[8] *Compare id.* (holding that solicitation of murder and subsequent murder were part of the same criminal episode despite the passage of several weeks between the two events), *with State v. Ireland*, 570 P.2d 1206, 1207 (Utah 1977) ("In this case there was a distinct difference in time, (that necessary to travel some 65 miles) . . . .").

¶26    In addition to the timing requirement, the statute requires that the various offenses be in furtherance of a "single criminal objective." *See* Utah Code Ann. § 76-1-401; *Mead*, 2001 UT 58, ¶ 56 ("There can be no doubt that the solicitation and murder charges share an identical criminal objective: the death of [the victim]."). Whether or not there is a single criminal objective "depends on the specific facts of the case viewed under . . . the totality of the

---

[8]We note that the timing requirement depends largely on the factual circumstances. Where multiple acts are "manifestations of a single, clear, criminal objective, the timing between the two incidents is not as crucial." *State v. Mead*, 2001 UT 58, ¶ 56 n.10, 27 P.3d 1115.

circumstances." *State v. Strader*, 902 P.2d 638, 642 (Utah Ct. App. 1995). Further, where a defendant is arguing that a subsequent prosecution is barred by a prior conviction, "it is appropriate to take a narrow, rather than an expansive, view of what [a single criminal episode] entails." *Id.*

¶27   In light of these considerations, we cannot say that Selzer has demonstrated that the sexual assaults and the subsequent gas station assault necessarily constituted a single criminal episode. *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448 (discussing the appellant's burden to demonstrate error). At the hearing on the motion to dismiss, the State argued, "[O]bviously the sexual assault had a very different purpose and that was for his sexual gratification and domination of the victim in a sexual act. That's a very different purpose than just being in a rage and beating someone in the face later in the morning." While other interpretations of Selzer's actions may be possible, the district court could certainly have accepted the State's argument and determined that the sexual assaults and the gas station assault did not share a single criminal objective.[9]

¶28   To prevail on appeal, Selzer would also need to establish that the sexual assaults were "known to the prosecuting attorney at the time [Selzer was] arraigned on the first information or indictment." *See* Utah Code Ann. § 76-1-402(2)(b). Selzer fails to identify anything in the record to suggest that the first prosecutor had such knowledge, and we agree with the State that there is no reason to believe that he did. The misdemeanor gas station assault

---

[9]To the extent that the district court did base its ruling on an unstated finding that the "specific facts of the case" did not establish a single criminal episode, *see State v. Strader*, 902 P.2d 638, 642 (Utah Ct. App. 1995), Selzer has not marshaled the evidence supporting such a finding. We therefore decline to disturb any such finding. *See* Utah R. App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding.").

charge was processed through the Provo City prosecutor's office following Selzer's arrest on the morning of June 1. The Provo City prosecutor's office charged Selzer with assault on June 2, 2008, and arraigned him on June 12. S.G. did not report the sexual assaults until the evening of June 1, when she went to the hospital for examination. S.G.'s sexual assault allegations were investigated by a different officer, and the resulting felony charges were screened through the Utah County Attorney. Selzer cites no record evidence showing that either the investigating officer or the Utah County Attorney's office informed the Provo City prosecutor of S.G.'s sexual assault allegations, and we note that Provo City lacked the authority to prosecute those felonies. *Compare* Utah Code Ann. § 17-18-1(1)(a)(i) (LexisNexis 2004) (granting counties authority over "all prosecutions for public offenses"), *with id.* § 10-3-928(2) (2007) (granting city attorneys authority to prosecute "infractions and misdemeanors"). Under these circumstances, Selzer has not persuaded us that the Provo City prosecutor knew about the sexual assaults at the time that Selzer was "arraigned on the first information or indictment." *Id.* § 76-1-402(2)(b) (2008).

¶29    In sum, we are not convinced that the district court erred when it denied Selzer's motion to dismiss. The district court could have based its ruling on a finding that the various crimes arose out of separate criminal episodes, or on a finding that the first prosecutor did not know about the sexual assaults, or both. Selzer did not ask the district court to clarify its ruling, and he has failed to establish on appeal that all of the crimes arose from a single criminal episode and that they were known to the first prosecutor at the time Selzer was arraigned on the gas station assault charge. For these reasons, we affirm the district court's denial of Selzer's motion to dismiss.

CONCLUSION

¶30    We determine that Selzer has not established that his trial counsel provided ineffective assistance in his handling of the

State's expert witnesses. We also determine that Selzer has failed to demonstrate error in the district court's denial of his motion to dismiss. Accordingly, we affirm Selzer's convictions.

_____