**2022 UT App 84**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSEPH ALARID,
Appellant.

Opinion
No. 20200728-CA
Filed June 30, 2022

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 181903147

Sarah J. Carlquist, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

TENNEY, Judge:

¶1　At the close of a two-day trial, a jury convicted Joseph Alarid of one count of aggravated sexual abuse of a child for touching the breasts of his stepdaughter (Stepdaughter). Alarid now asks us to reverse this conviction for either of two reasons. First, Alarid argues that he received ineffective assistance of counsel when his trial attorneys (collectively, Counsel) approved jury instructions that, in his view, failed to properly instruct the jury regarding the unanimity requirement. Second, Alarid argues that he received ineffective assistance when Counsel did not object to certain statements the prosecutor made during closing argument.

¶2 We disagree with Alarid on both fronts. First, the instructions correctly informed the jury of the unanimity requirement, so Counsel did not perform deficiently by approving them. And second, while we are troubled by the statements made during closing argument, we conclude that Alarid was not prejudiced by them because there is no reasonable probability that the statements affected the outcome of the trial. We accordingly affirm Alarid's conviction.

## BACKGROUND[1]

### Charges and Trial Testimony

¶3 Along with her mother (Mother) and brothers, Stepdaughter moved in with Joseph Alarid when she was four years old. Stepdaughter lived with Alarid until she was seventeen, at which point she moved out to live with her grandmother.

¶4 A few months after she moved out, Stepdaughter told both her grandmother and then Mother that Alarid had sexually abused her during her childhood and adolescence. Stepdaughter soon made the same allegations to police. Based on her allegations, the State charged Alarid with three counts of rape of a child (Counts I–III), one count of aggravated sexual abuse of a child (Count IV), and one count of sodomy on a child (Count V).

¶5 The case later went to trial. There, Stepdaughter testified about various instances in which Alarid allegedly abused her. With respect to Counts I–III and V, Stepdaughter testified that Alarid had raped and sodomized her over the course of several

---

1. "On appeal from a criminal conviction, we recite the facts from the record in the light most favorable to the jury's verdict." *State v. Anh Tuan Pham*, 2015 UT App 233, ¶ 2, 359 P.3d 1284.

years. According to Stepdaughter, these acts happened "[t]oo many" times to count.

¶6 For reasons explained in more detail below, this appeal largely turns on the allegations underlying Count IV. As noted, Count IV charged Alarid with aggravated sexual abuse of a child. By statute, Alarid would have been guilty of this offense if he touched Stepdaughter's "anus, buttocks, pubic area, . . . genitalia," or "breast[s]" "with the intent to arouse or gratify the sexual desire of any individual regardless of the sex of any participant" and he also satisfied any one of ten statutory aggravators. Utah Code Ann. § 76-5-404.1(2), (4) (LexisNexis Supp. 2021).[2]

¶7 On this front, Stepdaughter testified that Alarid had "stuck his hand down [her] pants and started fingering [her]" when she was five years old while she was sleeping next to him in the bed he shared with Mother. Stepdaughter testified that similar abuse "happened frequently" and that it often happened after Alarid had taken Mother to work. In addition, Stepdaughter testified that after she "started developing," Alarid "would touch [her] boobs and make comments about [her] boobs." Stepdaughter testified that while, she was showering, Alarid would "pick the lock" to the bathroom and "sometimes just stare at [her] or other times he would make comments about [her] entire body," and that he sometimes would "touch [her] butt or [her] vagina or [her] boobs."

¶8 In addition to Stepdaughter's testimony, Mother testified about a particular incident in which she remembered Alarid "grabbing [Stepdaughter's] boob and saying something [like], 'Whoa, you're getting big,' or something to that effect," while the three of them were "by the kitchen table." When Counsel pressed Mother on her memory of this event, Mother insisted that she "remember[ed] him touching" Stepdaughter's breasts.

---

2. Because there have been no material changes to the relevant statutory provisions, we cite the current version of the Utah Code.

¶9     After the State rested, Counsel presented the defense's case, which largely focused on testimony from two of Alarid's daughters and Alarid's sister-in-law. These witnesses each testified that Alarid was a good person, that they felt comfortable with him being around their children, and that they thought Stepdaughter was an untruthful person. Each also testified that she never saw Alarid physically abuse anyone and that she never suspected him of sexually abusing anyone either.

¶10     During the State's cross-examination of one of Alarid's daughters (Daughter), the prosecutor pressed Daughter about having "talked to [her] dad about this case" while he was incarcerated. In response, Daughter insisted that Alarid had "asked [her] to tell the truth" and that he had not "told [her] what to say."

*Relevant Jury Instructions*

¶11     In an initial jury instruction, the district court instructed jurors that they were "bound by [their] oath to follow the instructions," that "[a]ll the instructions are important," and that jurors "should consider them as a whole." In another instruction, the court instructed jurors that "[w]hen the lawyers give their closing arguments," jurors should "keep in mind that they are advocating their views of the case." The court further instructed jurors that "[w]hat [the lawyers] say during their closing arguments is not evidence." And the court also instructed jurors that they "must base [their] decision only on the evidence that [they] saw and heard here in court."

¶12     The court also gave Instruction 47, which was entitled "Jury Unanimity on Each Allegation." There, the court instructed jurors that "[t]he State must prove each and every element of each allegation beyond a reasonable doubt," that "[t]he verdict must represent the considered judgment of each juror," and that the "verdict must be unanimous." More particularly, the court instructed jurors that "[e]ach juror must also unanimously agree [on] the specific instance underlying each allegation or count."

¶13 With respect to the charges as a whole, Instruction 46 then informed jurors that "[f]or each offense, the verdict form will have two blanks—one for 'guilty' and the other for 'not guilty.'" Jurors were instructed that the foreperson would "fill in the appropriate blank to reflect the jury's unanimous decision."

¶14 As for the elements, Instruction 39 defined the elements for Count IV. There, jurors were instructed that to convict on that count, they must "find beyond a reasonable doubt each of the following elements," and among the listed elements was that, "with the intent to . . . [a]rouse or gratify the sexual desire of any person," Alarid "[i]ntentionally, knowingly, or recklessly: (a) [t]ouched the anus, buttocks, or genitals of [Stepdaughter], even if accomplished through clothing," or "(b) [t]ouched the breast of [Stepdaughter], even if accomplished through clothing."

¶15 In Instruction 46, jurors were also instructed: "If—and only if—you determine beyond a reasonable doubt that [Alarid] committed Aggravated Sexual Abuse of a Child (Count 4), you must complete the Special Verdict Form." And jurors were further instructed: "On the special verdict form, only check a box if you, as the jury, unanimously find that the prosecution has proven that factor beyond a reasonable doubt. Do not check a box if the prosecution has failed to prove that factor beyond a reasonable doubt." (Emphasis in original.)

¶16 The jury was then given a separate document entitled "Special Verdict Count 4." That form stated:

> We, the jurors in the above case, have found the defendant, JOSEPH ALARID, guilty of Aggravated Sexual Abuse of a Child as charged in Count 4. We also unanimously find the following beyond a reasonable doubt (check all that apply):
>
> ☐ The defendant touched the anus of [Stepdaughter]

☐ The defendant touched the genitals of [Stepdaughter]

☐ The defendant touched the breasts of [Stepdaughter]

☐ The defendant touched the buttocks of [Stepdaughter].

*Closing Arguments*

¶17 During closing argument, the prosecutor summarized the evidence that supported the State's case. While doing so, the prosecutor walked through each of the charges and then summarized the factual basis for each.

¶18 With respect to Count IV, the prosecutor explained that the jury had heard "that [Alarid] touched [Stepdaughter] all over her body," including that he'd "forced his fingers into her little 5-year old vagina," that he'd "touched her butt, . . . touched her breasts in the shower," and that Mother "saw him touch her breasts through . . . clothing." Turning to the special verdict form, the prosecutor explained to the jury that "what the special verdict form lays out for you is you have to agree unanimously on one or more of these points, and it's going to say check all that apply." The prosecutor further explained that "[y]ou have to be unanimous on each one of these. You can pick one, you can pick all of them, just make sure you're unanimous." And the prosecutor then remarked that the jury had "heard multiple different allegations" and that jurors were "going to have to pick one or multiple but that's going to be on [the] verdict form."

¶19 Responding to the defense's evidence, the prosecutor briefly addressed the testimony from Alarid's witnesses. Of note, the prosecutor referred to Daughter as "the co-conspirator that has been with [Alarid] lockstep through this whole thing," and the prosecutor claimed that Alarid had "talked to [Daughter] and told her what he wants her to say." Although there had been no

trial testimony supporting the assertion that Alarid had "told [Daughter] what he wants her to say," Counsel did not object to this statement or otherwise respond to it during the defense's closing argument.

## *Verdict*

¶20    After deliberating for over eight hours, the jury informed the judge that it could not "come to an agreement of verdict on 4 of the charges." The court then provided a "supplemental instruction" to the jury stating, "Please complete the verdict form as to the count where you have reached a unanimous verdict." The jury did, returning both the verdict and special verdict forms. On the verdict form, the jury indicated that it had found Alarid guilty of Count IV. And on the special verdict form, the jury checked the box indicating that it had unanimously found "beyond a reasonable doubt" that Alarid had "touched the breasts of [Stepdaughter]."

## *New Trial Motion*

¶21    Through Counsel, Alarid later filed a motion for a new trial, arguing that the jury instructions erroneously failed to require unanimity as to "which specific act supported Count 4." Alarid argued that this error was magnified because "the State did not identify which alleged touch related to Count 4" and had "erroneously argued" during closing argument that several different instances "could be used to convict."

¶22    The district court denied the motion, concluding that it was "not at all clear" that "any error, or even irregularity, occurred here" because the instructions had provided that "[e]ach juror must . . . unanimously agree on the specific instances underlying each allegation or count." It also "struggle[d] to see how" Alarid was prejudiced by any error. But the court ultimately concluded that it "need not definitively resolve" these questions "or decide the merits of [Alarid's] motion." This was so because Counsel had "finalized" and "stipulated" to the instructions with the

prosecutor. (Emphasis omitted.) Because of this, the court concluded that Alarid had "waived" any claim relating to those instructions.

¶23 Alarid was later sentenced to a prison term of six years to life. He timely appealed.

ISSUES AND STANDARD OF REVIEW

¶24 Alarid claims that he received ineffective assistance of counsel on two fronts. First, he argues that he received ineffective assistance when Counsel stipulated to the jury instructions. In Alarid's view, those instructions failed to adequately instruct the jury regarding the Utah Constitution's unanimity requirement. Second, Alarid argues that he received ineffective assistance when Counsel failed to challenge the prosecutor's statements about Daughter during closing argument. In Alarid's view, those statements amounted to prosecutorial misconduct. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Alires*, 2019 UT App 206, ¶ 15, 455 P.3d 636 (quotation simplified).

ANALYSIS

¶25 Alarid raises two ineffective assistance of counsel claims. To prevail on either, Alarid "must show that (1) trial counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him." *State v. Selzer*, 2013 UT App 3, ¶ 16, 294 P.3d 617 (quotation simplified).

¶26 To establish deficient performance, Alarid "must show that trial counsel's representation fell below an objective standard of reasonableness when measured against prevailing professional norms." *Honie v. State*, 2014 UT 19, ¶ 32, 342 P.3d 182 (quotation

simplified). To the extent that his claim turns on Counsel's failure to object to an alleged error, we view the matter "in context and determine whether correcting the error was sufficiently important under the circumstances that failure to do so was objectively unreasonable—i.e., a battle that competent counsel would have fought." *State v. Ray*, 2020 UT 12, ¶ 32, 469 P.3d 871. To establish prejudice, Alarid must then "present sufficient evidence to support a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Eyre*, 2021 UT 45, ¶ 31, 500 P.3d 776 (quotation simplified). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Alarid's] claims under either prong." *Honie*, 2014 UT 19, ¶ 31.

## I. Jury Instructions

¶27    Alarid first argues that the jury instructions, "read as a whole, failed to adequately instruct the jury that it had to be unanimous with respect to each specific act, i.e., unanimous with respect to each specific *touch*, before it could convict" on Count IV. (Emphasis in original.) Because of this, Alarid argues that he received ineffective assistance when Counsel stipulated to those instructions. Contrary to Alarid's contention, however, we believe that the instructions correctly conveyed the unanimity requirement to the jury. Counsel could accordingly have reasonably decided to stipulate to them and was not deficient in doing so.

¶28    "The right to a unanimous verdict in criminal cases is guaranteed by Article I, Section 10 of the Utah Constitution," which "requires unanimity as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision." *State v. Alires*, 2019 UT App 206, ¶ 18, 455 P.3d 636 (emphasis in original, quotation otherwise simplified); *see also State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951 (explaining that jurors must unanimously agree "as to [the] specific crime and as to each element of the crime").

¶29    A jury need not be unanimous as to the "alternative factual theories (or methods or modes) of committing a crime." *Alires*, 2019 UT App 206, ¶ 20 (emphasis omitted). But if a statute is written such that separate acts would each "constitute[] a distinct criminal offense," *id.* ¶ 21, the jury must unanimously agree as to the "*actus reus* element of the crime," *id.* ¶ 20. In such a case, it is "critical" that the jury be instructed that it "must agree as to which criminal acts occurred," lest the unanimity requirement be violated. *Id.* ¶ 23.

¶30    In *Alires*, we considered this requirement in a case involving the same offense at issue here: aggravated sexual abuse of a child. *See id.* ¶ 1. There, we held that defense counsel performed deficiently by not objecting when the jury was "*never* instructed that it must unanimously agree that [the defendant] committed the same unlawful act to convict on any given count." *Id.* ¶ 23 (emphasis added). The instructions in that case were infirm, we explained, because the jurors could have convicted the defendant even if they "completely disagreed on which acts occurred or which acts were illegal." *Id.*

¶31    Alarid claims that the instructions in this case suffer from the same infirmity, and from this alleged infirmity, he claims that Counsel was ineffective for not challenging them. We disagree. Unlike the jurors in *Alires*, the jurors in this case were instructed that they must unanimously agree as to a particular act before convicting Alarid of Count IV. This occurred in Instruction 47, which instructed that "[e]ach juror must also *unanimously* agree on the *specific instance* underlying each allegation or count." (Emphases added.) This instruction therefore gave the jurors in this case the very directive that was missing in *Alires*.

¶32    For this reason, this case is also dissimilar to *State v. Baugh*, 2022 UT App 3, 504 P.3d 171, *petition for cert. filed*, Mar. 16, 2022 (No. 20220272), a case that Alarid relied on in supplemental authority and during oral argument. In *Baugh*, the defendant was charged with two counts of aggravated sexual abuse of a child, *id.* ¶ 1, and, as in *Alires*, "nothing in th[e] case conclusively linked the

allegations to the counts listed in the instructions," *id.* ¶ 17. Because there was no "link" between each charged count and a "particular act," we concluded that the defendant's right to a unanimous jury was violated because "we [could not] know which one of the three instances of alleged abuse . . . was the one for which the jury convicted him." *Id.*

¶33 Alarid contends that there was a similar problem here— that "[n]othing in Instruction 47 or the other instructions would have led the jury to conclude that 'specific instance' meant specific act or specific touch" because the special verdict form did not identify "which breast touch occurred" and because the term "specific instance" wasn't defined. (Emphasis omitted.) But again, Instruction 47 told jurors that they must "*unanimously* agree on the *specific instance* underlying each allegation or count." (Emphases added.) "Instance" commonly means "a particular situation, event, or fact."[3] And "specific" means "relating to one thing and not others,"[4] or being "restricted to a particular individual, situation, relation, or effect."[5] In light of these understood meanings for these common terms, we are confident that the jury would have understood Instruction 47's reference to a "specific instance" as requiring jurors to unanimously agree on a single touching to convict Alarid of Count IV.

---

3. *Instance*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/instance [https://perma.cc/M7TY-UBUA]; *see also Instance*, Merriam-Webster, https://www.merriam-webster.com/dictionary/instance [https://perma.cc/C5BW-TH2U] (defining "instance" as "a step, stage, or situation").

4. *Specific*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/specific [https://perma.cc/EMX7-D9SU].

5. *Specific*, Merriam-Webster, https://www.merriam-webster.com/dictionary/specific [https://perma.cc/7K5A-LA3U] (definition 2a).

¶34    In Alarid's view, however, this was still not enough. Even with Instruction 47, Alarid claims that two additional problems remained.

¶35    First, Alarid asserts that Instruction 47 was insufficient because it was a global or "catch-all" instruction. At oral argument, he asserted that courts "can't rely on 'catch-all' instructions in cases like this because the jury might not understand how a general 'catch-all' should affect their deliberations as to a specific count." We take this to mean that, in Alarid's view, a jury must be given a unanimity instruction with respect to each charge.

¶36    We disagree. It is axiomatic that "when reviewing jury instructions, we look at the jury instructions in their entirety" and "affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *State v. Lambdin*, 2017 UT 46, ¶ 41, 424 P.3d 117 (quotation simplified). Indeed, the jury here was instructed about this very concept. As noted, the district court instructed jurors that they were "bound by [their] oath to follow the instructions," that "[a]ll the instructions are important," and that jurors "should consider them as a whole." So when jurors were then instructed in Instruction 47 that they were required to "unanimously agree on the specific instance underlying each allegation or count," the jurors would have understood that this requirement applied to each of the counts and allegations at issue. The court was not obligated to redundantly remind jurors of this same unanimity requirement in particularized instructions for each count.

¶37    Second, Alarid suggests that, even with Instruction 47, jurors might have thought that they were not required to be unanimous as to each act based on language from Instruction 46 coupled with language from the special verdict form. Specifically, Instruction 46 instructed jurors that if they determined "beyond a reasonable doubt that [Alarid] committed Aggravated Sexual Abuse of a Child," they must "complete the Special Verdict Form." It further instructed jurors that they should "<u>only</u> check a

box" on "the special verdict form" if they, "as the jury, unanimously find that the prosecution has proven *that factor* beyond a reasonable doubt." (Emphasis in original, *emphasis* added.) Then, in the list of boxes on the special verdict form, the jury checked the box that stated that "[t]he defendant touched the breasts of [Stepdaughter]."

¶38    In Alarid's view, jurors might have thought that because Instruction 46 only told them they needed to be unanimous as to a particular "factor," and that since the special verdict form then referred to breast-touching generally without also requiring unanimity as to a particular instance of breast-touching, jurors might have thought that they only needed to be unanimous as to whether Alarid touched Stepdaughter's breasts at some point (without having to unanimously agree as to a particular instance).

¶39    This is a very nuanced argument, and it requires reading Instruction 46 together with the special verdict form in a very particular way. But "jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might"; instead, we presume that jurors engage in a "deliberative process" in which a "commonsense understanding of the instructions . . . prevail[s] over technical hairsplitting." *State v. Hutchings*, 2012 UT 50, ¶ 25, 285 P.3d 1183 (quotation simplified); *accord State v. Gollaher*, 2020 UT App 131, ¶ 38, 474 P.3d 1018. In light of these understandings, it's not at all clear to us that jurors would have thought to read Instruction 46 together with the special verdict form in the manner now proposed by Alarid on appeal.

¶40    And this is particularly so because of the general presumption "that a jury will follow the instructions given it." *State v. Nelson*, 2011 UT App 107, ¶ 4, 253 P.3d 1094 (quotation simplified). And as we have long recognized, "[i]n the absence of the appearance of something persuasive to the contrary, we assume that the jurors . . . followed the instructions of the court." *State v. Burk*, 839 P.2d 880, 883 (Utah Ct. App. 1992) (quotation simplified). Again, Instruction 47 gave jurors an unequivocal

directive that they must "unanimously agree on the specific instance underlying each allegation or count." We can therefore presume that jurors followed this particular directive.

¶41    Thus, while it may have "been better," *State v. Vigil*, 2019 UT App 131, ¶ 15, 448 P.3d 738, if Instruction 46 was worded differently with respect to the factors, and while Instruction 46 or the special verdict form could have contained additional language reminding jurors that they must be unanimous as to a particular act, we don't see any error in either respect. Instead, reviewing the instructions "as a whole," we believe that they "fairly instructed the jury about the applicable law." *State v. Seach*, 2021 UT App 22, ¶ 17, 483 P.3d 1265 (quotation simplified).

¶42    This is ultimately fatal to Alarid's claim. Again, the "constitutional requirement" is "that a jury must be unanimous as to distinct counts or separate instances of a particular crime." *Alires*, 2019 UT App 206, ¶ 19. The jury here was directly instructed about this exact requirement. Because we see no instructional error, we also see no deficient performance in Counsel's approval of these instructions. We accordingly reject this claim.

## II. Prosecutorial Misconduct

¶43    Alarid next argues that he received ineffective assistance when Counsel did not "object, respond, or otherwise move to remedy the prosecutorial misconduct that occurred in closing"—namely, the "improper statements" made by the prosecutor in reference to Daughter.

¶44    As an initial matter, we agree with Alarid that the prosecutor made improper statements. Like defense counsel, prosecutors "have considerable latitude in their arguments to the jury," and "they may discuss fully their viewpoints of the evidence and the deductions arising therefrom." *State v. Powell*, 2007 UT 9, ¶ 36, 154 P.3d 788 (quotation simplified). But while prosecutors "may strike hard blows," they are "not at liberty to

strike foul ones." *State v. Todd*, 2007 UT App 349, ¶ 18, 173 P.3d 170 (quotation simplified). Thus, even with the latitude given for closing argument, there are limits. And one of these limits is that a prosecutor may not "prompt[] the jury to consider matters outside the evidence." *State v. King*, 2010 UT App 396, ¶ 22, 248 P.3d 984. Such comments are problematic because of "the possibility that the jury will give special weight" to a prosecutor's statements, "not only because of the prestige associated with the prosecutor's office, but also because of the fact-finding facilities presumably available to the office." *State v. Thompson*, 2014 UT App 14, ¶ 43, 318 P.3d 1221 (quotation simplified). In other words, when a prosecutor improperly refers to facts that were outside the evidence, such a reference might lead jurors to improperly surmise that the prosecutor knows things that were not presented to jurors during the trial.

¶45   We agree with Alarid that this may well have happened here. During closing argument, the prosecutor made the following statement about Daughter: "We'll just call her the co-conspirator that has been with [Alarid] lockstep through this whole thing, and then he's talked to her and told her what he wants her to say."

¶46   This was problematic on two levels. First, as a matter of both legal and ordinary usage, the term "co-conspirator" commonly refers to someone who has made an agreement with another to do a wrongful thing.[6] But there was no evidence in this

---

6. *See Coconspirator*, Black's Law Dictionary (11th ed. 2019) (defining "coconspirator" as one who "engages in a criminal conspiracy with another"); *Coconspirator*, Merriam-Webster, https://www.merriam-webster.com/dictionary/co-conspirator [https://perma.cc/2GE7-D36E] (defining "coconspirator" as "a person who conspires with one or more others"); *see also Conspire*, Merriam-Webster, https://www.merriam-webster.com/dictionary/conspire [https://perma.cc/YMH8-GMDX] (defining "conspire" as

(continued…)

case that Daughter had "conspired" with Alarid to do anything, let alone anything criminal. And this leads to the second problem, which was the prosecutor's follow-up assertion that Alarid had "told her what he wants her to say." Not only was there was no evidence to support this assertion, but the evidence presented was to the contrary. In her testimony, Daughter acknowledged that she had visited Alarid while he was incarcerated and that Alarid had asked her to testify on his behalf. She also acknowledged that Alarid had asked her to talk about "[t]opics." But when the prosecutor asked her whether Alarid had "told [her] what to say," Daughter unequivocally responded, "No." She never backed off this, and the State never presented any evidence to the contrary. Thus, when the prosecutor told jurors during closing argument that Alarid had "told her what he wants her to say," the prosecutor was either misstating the evidence or suggesting to the jury that he knew something outside the evidence. Either would have been improper.

¶47   But even so, the claim here is that Alarid received ineffective assistance when Counsel did not challenge the prosecutor's assertions. As noted, Alarid must establish both deficient performance and prejudice, and we can affirm based on a lack of prejudice alone. *Honie*, 2014 UT 19, ¶ 31. To show prejudice, Alarid must convince us that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Eyre*, 2021 UT 45, ¶ 31 (quotation simplified). And when assessing this, we "consider the totality of the evidence before the judge or jury," *State v. Gallegos*, 2020 UT 19, ¶ 33, 463 P.3d 641 (quotation simplified), as well as the "circumstances of the case as a whole," *State v. Haar*, 2021 UT App 109, ¶ 66, 500 P.3d 102 (quotation simplified).

¶48   Here, even if Counsel did perform deficiently by not challenging the prosecutor's statements, we conclude that Alarid

---

"join[ing] in a secret agreement to do an unlawful or wrongful act").

was not prejudiced by that failure. This is so because the likely impact of these statements was minimal. This is not a case where there was any direct physical evidence to corroborate the allegations. Because Alarid did not testify, the case therefore largely turned on the jury's assessment of Stepdaughter's credibility. On this front, the jury heard from Stepdaughter directly, whose testimony spanned some fifty-five pages of transcript, including a lengthy cross-examination by Counsel. In addition to Stepdaughter's testimony, the State presented testimony from Mother, who testified that she had seen Alarid grab her daughter's breast once near their kitchen table. Like Stepdaughter, Mother was cross-examined at length.

¶49 To cast doubt on Stepdaughter's claims, Alarid called three family members. Each of them testified that Alarid had spent considerable time with their own or other family members' children and yet they never suspected him of abuse, and each family member also shared her opinion that Stepdaughter was untruthful. Daughter was one of these witnesses, and her testimony was substantially similar to the testimony of her sister and Alarid's sister-in-law. But critically, while the prosecutor made the improper statements described above about Daughter's credibility, the prosecutor made no similar statements about the other daughter or about Alarid's sister-in-law.

¶50 In addition to being limited in impact to just one witness, the comments were also a small part of a larger evidentiary picture. The trial took two days. The overall trial transcript is over five hundred pages, the prosecutor's closing argument covers just nineteen pages, and the improper statements in question take up just three lines from those nineteen pages. After making those statements, the prosecutor made no further reference to either his "co-conspirator" aspersion or his assertion that Alarid had "told [Daughter] what he wants her to say."

¶51 Moreover, when conducting a prejudice analysis on an ineffective assistance claim, we must consider the "counterfactual[] scenarios"—i.e., "what would have happened

but for the ineffective assistance." *Ross v. State*, 2019 UT 48, ¶ 76, 448 P.3d 1203. Here, if Counsel had objected to the improper statements, the apparent remedy would have been for the court to strike the statements and instruct the jury to disregard them. But the jury already had a basis for doing so. Before closing arguments, the court instructed jurors that "[w]hat the lawyers say is not evidence." And in his rebuttal, the prosecutor told the jury that anything he said in closing was "not evidence." This, too, undermines any suggestion that Alarid was prejudiced by these improper comments.

¶52 In short, what we have is this: the jury heard from Stepdaughter herself about the alleged sexual abuse, so the jury had a basis for evaluating her testimony directly; the jury heard from two other defense witnesses whose credibility was not impugned in a similar manner; the statements in question were small parts of both the prosecutor's closing and the overall case; and the jury already had some basis for disregarding the very statements in question. In light of all this, while we are troubled by the prosecutor's statements, we believe that it's not reasonably likely that the outcome of Alarid's trial would have been any different had Counsel objected to or otherwise challenged the improper statements. This ineffective assistance claim therefore fails.[7]

---

7. Alarid also asks us to apply the cumulative error doctrine to conclude that the "cumulative effect of the errors" "require[s] reversal." "Cumulative error refers to a number of errors which prejudice a defendant's right to a fair trial." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (quotation simplified). Under this doctrine, "we will reverse a jury verdict or sentence only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *Id.* (quotation simplified). As explained, however, the jury instructions properly instructed the jury regarding unanimity. Because of this, there is nothing to accumulate to Alarid's claim of prejudice regarding the closing argument. We accordingly reject this claim.

CONCLUSION

¶53    Counsel was not ineffective for stipulating to the jury instructions because the instructions properly informed the jury regarding unanimity. And although the prosecutor's statements during closing argument were improper, Alarid was not prejudiced by Counsel's failure to challenge them. We therefore affirm Alarid's conviction.

———————